Waldron Appeal.

Submitted June 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Calvin S. Drayer, Jr.,* Assistant Public Defender, for appellant.

*Stewart J. Greenleaf,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., December 1, 1975:

On December 27, 1974, the appellant, Joseph Waldron, age 16, was adjudicated delinquent and committed to Anchor House, a group home in Lansdale, Pennsylvania, by the Montgomery County Court of Common Pleas.

The lower court's adjudication was predicated on appellant's alleged involvement in three separate criminal episodes: (1) participating in the burglary of the

residence of Susan Lyle;[1] (2) the unauthorized use of Paul Kundrik's automobile; and, (3) the theft of gasoline from the automobile of Wade Tway. In addition, each of the foregoing charges were accompanied by a related charge of conspiracy. Appellant challenges the sufficiency of the evidence to sustain the charges of burglary and unauthorized use of an an automobile, and contends that his arrest for the theft of gasoline was illegal.

"In reviewing the sufficiency of the evidence to support the adjudication below, we recognize that the Due Process Clause of the United States Constitution requires proof 'beyond a reasonable doubt' at the adjudication stage when a juvenile is charged with an act which would constitute a crime if committed by an adult. *In re: Winship,* 397 U.S. 358, 90 S. Ct. 1068 (1970) ; *Terry Appeal,* 438 Pa. 339, 347, 265 A. 2d 350, 354 (1970) ; aff'd. 403 U.S. 528, 91 S. Ct. 1976 (1971). Additionally, we recognize that in reviewing the sufficiency of the evidence to support the adjudication of delinquency, just as in reviewing the sufficiency of evidence to sustain a conviction, though we review the entire record, we must view the evidence in the light most favorable to the Commonwealth. See, e.g., *Commonwealth v. Lawrence,* 428 Pa. 188, 189, 236 A.2d 768, 769 (1968)." *Johnson Appeal,* 445 Pa. 270, 272 (1971).

With the scope of our review so defined, we turn to appellant's three contentions.

## I.

With respect to appellant's contention that the evidence was insufficient to sustain the charge of burglary and the conspiracy count related thereto, the record discloses the following. In the early afternoon of November

---

1. Two other burglary charges were dismissed when the Commonwealth failed to present any evidence regarding those charges.

6, 1974, the appellant and two companions, John Bright and David Bell, were walking together in a park adjacent to a residential neighborhood. Bright and Bell were attempting to figure out a way of obtaining some money. When the boys walked by the home of Susan Lyle the appellant remarked that "other people got TV's from there." Upon hearing this Bright and Bell unlawfully entered the Lyle residence and stole a portable television set and transistor radio. While his companions were burglarizing the Lyle residence, the appellant waited outside some fifty yards from the house. When Bright and Bell came out appellant spoke to them for a few seconds and then left their company.

Appellant contended that he had nothing to do with the burglary; that he neither suggested nor encouraged the burglary; that he lent no assistance in gaining entrance to the house; that he was not serving as a lookout; that he waited for them to come out because he wanted to talk to them; that he did not share in the stolen property; and that he simply commented that the Lyle residence had been burglarized numerous times.

Although the Commonwealth's chief witness, David Bell, substantially corroborated appellant's testimony, the lower court refused to believe appellant's testimony. This was the lower court's prerogative. *Commonwealth v. Harris, supra.* The lower court justifiably found appellant's testimony "contradictory in part and totally unconvincing." At one point appellant stated that he was present when Bell and Bright were discussing how they could obtain some money. At another point, appellant testified he was not with the two boys when they were discussing their desire to obtain money. David Bell, however, testified appellant was present when this discussion took place.

Section 903 of our Crimes Code[2] provides in pertinent part that:

"A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

Here, appellant admitted that he knew his companions were burglarizing the Lyle residence. His contention that he stood outside the Lyle home while the burglary was being committed, but not in the role of a lookout, strains credulity. To sustain a conviction for conspiracy, direct proof of an agreement between co-defendants to commit an unlawful act is not essential.

" '[W]here the conduct of the parties indicates that they were acting together with a common and corrupt purpose in view, the jury may properly infer that a conspiracy did exist: *Commonwealth v. Albert,* 151 Pa. Superior Ct. 184, 30 A.2d 184 (1943) ; *Commonwealth v. Rosen,* 141 Pa. Superior Ct. 272, 14 A.2d 833 (1940).' *Commonwealth v. Schwartz,* 210 Pa. Superior Ct. 360, 381, 233 A.2d 904, 914 (1967)." *Commonwealth v. Armbruster,* 225 Pa. Superior Ct. 415, 420 (1973).

We are in agreement with the court below that the conduct of appellant in conjunction with that of his two companions, indicates that all three acted with a com-

---

2. Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa. C.S. §903. .

mon and corrupt purpose in mind. Accordingly, we conclude that the evidence was sufficient to establish appellant's participation in the conspiracy and burglary of the Lyle residence.

## II.

At the adjudication hearing the following account on the charge of unauthorized use of an automobile[3] was developed. The owner of the automobile, Paul J. Kundrik, testified that the only person who had his permission to operate the car was his daughter. Appellant admitted that he had driven the automobile, but contended that John Doxson, who had "possession" of the vehicle, told him that the car belonged to his sister.[4] Appellant maintained that he had no knowledge that the vehicle had been stolen until the night he and Doxson had an accident with the car, and as Doxson was fleeing the scene he, for the first time, informed appellant that the car had been stolen. Appellant testified that upon learning the true status of the car he also fled. The court below chose not to believe appellant's explanation, and concluded that appellant had sufficient reason to know the car did not lawfully belong to Doxson. We conclude, however, that the evidence was not sufficient to support the charge of unauthorized use.

Section 3928, supra, provides, in relevant part, as follows:

"(a) Offense defined. —A person is guilty of a misdemeanor of the second degree if he operates the automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle of another without consent of the owner."

The former Penal Code of 1939 contained no offense similar to Section 3928 of our present Crimes Code. How-

---

3. 18 Pa. C.S. §3928.

4. The vehicle had in fact been stolen by Doxson in early October, 1974.

ever, Section 624(5) of The Vehicle Code,[5] is virtually identical to Section 3928. Section 624(5), in pertinent part, provides:

"It shall be unlawful for any person to commit any of the following acts:

... (5) To make use of or operate any motor vehicle or tractor without the knowledge or consent of the owner or custodian thereof."

In *Commonwealth v. Cross,* 232 Pa. Superior Ct. 496, 335 A.2d 756 (1975), we construed Section 624(5) to mean that criminal intent or guilty knowledge was not an essential element of the offense; and, that a conviction would be sustained if the Commonwealth merely established that the defendant operated the vehicle without the owner's knowledge or permission. Accord: *Commonwealth v. Grant,* 235 Pa. Superior Ct. 357, 341 A.2d 511 (1975). In view of the obvious similarities[6] between 75 P.S. § 624(5) and 18 Pa. C.S. § 3928, it would appear at first blush that our decisions in *Cross* and *Grant* are controlling as to the instant appeal. However, our examination and analysis of the Crimes Code[7] leads us to conclude that proof of mens rea or guilty knowledge is essential to establish the material elements of Section 3928.

This conclusion is mandated by Section 302 of the Crimes Code which discusses the various mental states necessary for the imposition of criminal liability. Section 302(a) provides:

"(a) Minimum requirements of culpability.—Except as provided in Section 305 of this title (relating

---

5. Act of April 29, 1959, P.L. 58, §624; August 27, 1963, P.L. 1353, §1, 75 P.S. §624(5).

6. Both statutes proscribe the same conduct; namely, what is commonly referred to as "joy-riding." And, most significantly, neither statute specifically provides that mens rea or guilty knowledge is an essential element of the offense.

7. The offenses in *Cross* and *Grant* both occurred prior to June 6, 1973, the effective date of the Crimes Code.

to limitations on scope of culpability requirements), a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense."

Section 302(c) states:

"(c) Culpability required unless otherwise provided. —When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto."

The plain and reasonable import of these two sections is that where the statute in question is silent as to culpability, as is Section 3928, then culpability is required "except as provided in Section 305."[8] Further, the requisite kind of culpability "is established if a person acts intentionally, knowingly or recklessly. . . ." Accordingly where an individual has permission to operate a vehicle from a person whom he reasonably believes to be in lawful possession of the vehicle, Section 3928 is not violated.[9]

Instantly, the lower court found that appellant had reason to know the car was stolen because of two circumstances. First, the court below found crucial the fact that

---

8. Section 305 provides that the culpability requirements of the Crimes Code are inapplicable—with certain exceptions—to *summary* offenses, and offenses defined by statutes other than the Crimes Code where a legislative intent to impose absolute liability clearly appears. Since the unauthorized use of a motor vehicle is a *misdemeanor* of the second degree, Section 305 does not relieve the Commonwealth from proving mens rea or culpability.

9. It should be recognized that our decision in this case results in the repeal of 75 P.S. §624(5) by reason of the general repealer clause of the Crimes Code, Section 5(b), which states:

"All acts and parts of acts inconsistent with this act are hereby repealed." See Toll, *Pennsylvania Crimes Code Annotated* (1974), §3928, Reporter's Comment.

appellant had met Doxson only a few days before the accident and Doxson had a different car at that time. Secondly, the lower court believed that appellant's flight from the scene of the accident "was evidence that he knew something was wrong and that the car did not belong to John Doxson." It is our opinion that these two factors standing alone do not justify an inference that appellant had reasonable cause to know that the vehicle was stolen. "Although the Commonwealth does not have to establish guilt to a mathematical certainty, and may in the proper case rely wholly on circumstantial evidence, the conviction must be based on more than mere suspicion or conjecture." (Footnotes omitted.) *Commonwealth v. Roscioli*, 454 Pa. 59, 62 (1973); *Commonwealth v. Bailey*, 448 Pa. 224, 227 (1972).

The first time appellant encountered Doxson he observed him driving a brown Chevrolet. The Kundrik vehicle was a white Chevrolet. We do not believe the common circumstance of driving a different car on an earlier occasion can either reasonably or naturally justify an adverse inference as to the appellant's knowledge of the true status of the Kundrik vehicle. With respect to appellant's flight, the record discloses that Doxson, not appellant, was driving the stolen vehicle when the accident occurred. Appellant testified that Doxson started to flee first and when he informed appellant that the car was stolen, appellant then also departed. The fact that appellant fled after the accident does not establish that he knew prior to the accident that the vehicle had been stolen. Cf. *Commonwealth v. Bailey*, supra. It is a matter of common knowledge that many drivers, particularly juveniles, panic after an accident and leave the scene— even without receiving such disconcerting information. Appellant's conduct was not so inconsistent with innocence as to lead us to conclude that the conviction was predicated on anything more than mere conjecture or suspicion. *Commonwealth v. Stanley*, 453 Pa. 467 (1973); *Commonwealth v. Roscioli*, supra.

Therefore, the order of the lower court with respect to the charge of unauthorized use of a motor vehicle is reversed.

### III.

Finally, we turn to the petition charging appellant with the theft of gasoline.[10] In this connection, the record reveals the following pertinent facts. The car from which the gasoline was siphoned belonged to Wade Tway. Tway's neighbor, Barbara Shaw, testified that she and Bill Thomas, among others, were sitting in front of her house when they observed a car occupied by several young people stop next to the Tway vehicle. Their suspicions aroused, she and Bill Thomas decided to investigate. Miss Shaw stated that she heard rattling sounds and saw two juveniles alongside the Tway car with a gas can. Bill Thomas testified that he saw one youth actually attempting to siphon gas from the Tway car. The youths then fled after Mr. Thomas confronted them. The police were then called to the scene and given a description of the youths' car and license number. Shortly thereafter the police apprehended the car and found four youths in it, including the appellant who was driving the car. Found in the car were several hoses which were permeated with the odor of gasoline. The youths were then taken into custody. Linda Cieslinki, a juvenile officer, testified that she asked appellant at headquarters why he took the gas, and he responded, "because we needed it."

Appellant contends that his arrest was illegal because he was arrested without a warrant for a misdemeanor which was not committed in the presence of the arresting officer. We must agree.

The only information received by the arresting officer was that there had been an attempted gasoline theft. Under our Crimes Code theft can rise no higher than a

---

10. 18 Pa. C.S. §3921.

felony of the third degree, and then only if the amount of the property exceeds $2,000 or if the property is of a certain type such as a firearm or a motor-propelled vehicle. 18 Pa. C.S. §3903(a). Instantly, it is beyond question that the property here involved does not fall within the purview of §3903(a). Therefore, the offense was clearly a misdemeanor and thus the arresting officer had no authority to effect an arrest without first obtaining a warrant, unless he had probable cause to believe the offense was being committed in his presence.[11] Rule 101 (3) of the Pennsylvania Rules of Criminal Procedure, 19 P.S. Appendix. A person may only effect a warrantless arrest for a misdemeanor "where he has probable cause to believe that a misdemeanor is being committed in his presence." *Commonwealth v. Vassiljev,* 218 Pa. Superior Ct. 215, 219-220 (1971); Accord: *Commonwealth v. Reeves,* 223 Pa. Superior Ct. 51 (1972). Here, the misdemeanor was not committed in the officer's presence and, therefore, the warrantless arrest was invalid. Furthermore, both appellant's "confession" to the juvenile officer and the physical evidence seized from the vehicle were inadmissible at the adjudication hearing because they were the product of the illegal arrest. *Wong Sun v. United States,* 371 U.S. 471 (1963); *Commonwealth v. Daniels,* 455 Pa. 552 (1974).

Accordingly, we make the following disposition of this appeal. The order of the court below as to the charges

---

11. It should be noted that on October 17, 1974, P.L. 749, No. 251, 18 Pa. C.S. §3904, was enacted by the General Assembly. This addition to the Crimes Code provides:

"§3904. Arrest without warrant

A law enforcement officer shall have the same right of arrest without a warrant for *any* grade of theft as exists or may hereafter exist in the case of the commission of a felony." (Emphasis ours.)

The Commonwealth does not have the benefit of this amendment because the instant theft was committed on October 14, 1974.

of burglary and conspiracy to commit burglary, are affirmed; however, the order of the court below as to the charges of gasoline theft and unauthorized use of an automobile, are reversed.

Concurring and Dissenting Opinion by Price, J.:

I join Parts I and III of the majority opinion. However, I must dissent from the result reached in Part II. My review of the record convinces me that the lower court correctly determined that the appellant knew the car was stolen at the time he operated it.

I believe that the resolution of the issue of appellant's knowledge depends entirely upon the credibility of witnesses. This court has stated on many occasions that the credibility of witnesses is for the finder of fact, and that his findings will not be disturbed absent an abuse of discretion. *Commonwealth v. Porter*, 229 Pa. Superior Ct. 314, 323 A.2d 128 (1974) ; *Commonwealth v. Palmer*, 229 Pa. Superior Ct. 1, 323 A.2d 69 (1974) ; *Commonwealth v. Portalatin*, 223 Pa. Superior Ct. 33, 297 A.2d 144 (1972). In the instant case, the lower court found that appellant had knowledge, basing its decision upon the testimony adduced at the hearing. I believe that finding to be supported by competent evidence, and would affirm it.

Appellant testified that he had, in fact, operated the car earlier on the day of the accident. He also testified that he ran from the scene of the accident. It is settled law in this Commonwealth that evidence of flight is indicative of guilty knowledge. *Commonwealth v. Collins*, 440 Pa. 368, 269 A.2d 882 (1970). Moreover, appellant admitted that he had met Doxson several days before the collision, and that Doxson had been driving a different car at the time. These factors, to my view, adequately support the findings of the court below.

Moreover, the juvenile court judge simply did not believe that Doxson told appellant that the car belonged

to his sister. Such a finding, based upon the demeanor of the witnesses and the content of their testimony, is peculiarly within the lower court's discretion.

I would affirm the conviction of unauthorized use of an automobile.

JACOBS and VAN DER VOORT, JJ., join in this concurring and dissenting opinion.