## Commonwealth v. Kishbaugh

*William H. Platt*, for Commonwealth.
*Donald H. Lipson*, for defendant.

DAVISON, *J.*, April 2, 1979—We have before the court en banc defendant's post-trial motions, which raise, inter alia, the question of the constitutionality of Pennsylvania's vehicular homicide statute, following his conviction thereunder.

Defendant, Henry A. Kishbaugh, was charged with homicide by vehicle[1] and the summary of-

---

1. 75 Pa.C.S.A. §3732.

fenses of reckless driving[2] and following too closely[3] after a collision which occurred on the Pennsylvania Turnpike on September 7, 1977. Kishbaugh was operating a tractor trailer which collided with the rear of a disabled vehicle occupied by a Louis Marinari which was being towed by another vehicle driven by his sister-in-law, Frances Fessmeyer. Marinari died in the burning automobile as a direct result of the accident.

Following a jury trial, defendant was found guilty of homicide by vehicle and, by virtue of Com. v. Campana,[4] by the trial judge of reckless driving and following too closely.

Defendant's motions raise numerous contentions. First he alleges that the evidence was insufficient to sustain a finding of violation of the following too closely provisions of the Vehicle Code. This is critical, since a conviction for vehicle homicide is dependent upon a showing of violation of some other traffic regulation. Defendant argues, as we understand it, that the only evidence of following too closely was circumstantial in nature in that there was no eye witness testimony as to the distance between the tractor trailer driven by defendant and the vehicle occupied by decedent prior to the collision. However, he cites no authority for what he proposes to be the proposition that direct evidence is necessary to support a conviction for following too closely.

2. 75 Pa.C.S.A. §3714.

3. 75 Pa.C.S.A. §3310.

4. 452 Pa. 233, 304 A. 2d 432 (1973), remanded sub. nom. Pennsylvania v. Campana, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed. 2d 44 (1973).

In determining whether the evidence is sufficient to sustain the verdict, the facts, and all reasonable inferences arising therefrom, must be viewed in the light most favorable to the Commonwealth: Com. v. Jacobs, 247 Pa. Superior Ct. 373, 372 A. 2d 873 (1977). In so viewing the evidence, on the sunny clear day of this tragic occurrence, we regard the roadway to have been straight and level and visibility excellent. There were no truck skidmarks prior to impact, no truck skidmarks indicating that defendant attempted to swerve his vehicle prior to collision, and the witness behind defendant's vehicle observed no ignition of defendant's brake lights prior to impact nor any attempt by defendant to maneuver to avoid collision. Kishbaugh admitted that he had taken his eyes off the road when cigarette ashes had blown in his eyes and that he did not immediately apply his brakes even when he sighted the Marinari vehicle. The collision was a violent one, the tractor trailer traveling some 306 feet after impact, breaking through a turnpike guard rail and coming to rest about 100 feet from the berm of the road.

While the mere happening of an accident does not prove that defendant was following too closely, it is well recognized that proof of attendant circumstances, that is circumstantial evidence, may provide sufficient showing of negligence or statutory violation even absent direct evidence: Com. v. Gill, 120 Pa. Superior Ct. 22, 182 A. 2d 103 (1935); Com. v. El-Amin, 247 Pa. Superior Ct. 222, 372 A. 2d 18 (1977).

From the above circumstantial evidence, the fact finder could reasonably have concluded not simply that a collision occurred, but that, in failing to see what should have been a plainly visible vehicle on

this four lane super highway until he was virtually on top of it, defendant had been inattentive for a substantial period of time without attempting to slow down and had approached and followed the Marinari vehicle more closely than was "reasonable and prudent." See Meek v. Allen, 162 Pa. Superior Ct. 495, 58 A. 2d 370 (1948).

Defendant's second contention is that the evidence was insufficient to sustain the reckless driving charge. Here, too, circumstantial evidence is sufficient to prove the violation: Com. v. El-Amin, supra. To constitute reckless driving, the conduct must amount to careless disregard of the rights and safety of others: Com. v. Podrasky, 250 Pa. Superior Ct. 57, 378 A. 2d 450 (1977); that is, something less than willful and wanton conduct yet more than ordinary negligence: Com. v. El-Amin, supra. Defendant cites, and we have reviewed, numerous cases in which the evidence was found insufficient to sustain the charge of reckless driving. See Com. v. Stephens, 179 Pa. Superior Ct. 255, 115 A. 2d 904 (1955); Com. v. Stosny, 152 Pa. Superior Ct. 236, 31 A. 2d 582 (1943); Com. v. Forrey, 172 Pa. Superior Ct. 65, 92 A. 2d 233 (1952). However, those cases involve circumstances where the consequences of the drivers' negligence could not have been foreseen, and so the acts were found not to rise to the level of careless disregard. The facts and reasonable inferences in the case at bar support the conclusion either that defendant had his eyes off the road for so substantial a period of time as to be totally unaware of plainly visible vehicles in front of him, or that he was aware of the existence of such vehicles and failed to take any precautionary actions when forced to take his eyes off the road for a short time because of blowing cigarette ashes. In

either case, it was reasonably foreseeable a collision could occur, and that element of foreseeability places this case closer to Com. v. Kmit, 81 D. & C. 135 (1951), in which reckless driving was found, than to defendant's cited cases.

We hold that reckless driving and following too closely were properly submitted to the fact finder and that the evidence was sufficient to sustain the verdict.

We next consider defendant's contentions that the offense of vehicle homicide should be more properly regarded as a summary offense in that it is an absolute liability statute containing no culpability requirements for conviction, and that there was error in the jury charge relative to the definition of reckless driving.

Section 302 of the Crimes Code, 18 Pa.C.S.A. §302, sets forth the general rule that a culpability element is necessary for conviction under the Crimes Code, and various cases have held that where a Crimes Code provision is silent as to a culpability requirement one will be inferred: Waldron Appeal, 237 Pa. Superior Ct. 298, 353 A. 2d 43 (1975); Com. v. Black, 251 Pa. Superior Ct. 539, 380 A. 2d 911 (1977).

However, Crimes Code section 305(a)(2) states that culpability requirements do not apply to: "(2) offenses defined by statutes other than this title, in so far as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof plainly appears." Further, section 305(b) provides that absolute liability statutes outside the code will be deemed summary offenses "unless a subsequent statute otherwise provides: . . . " Therefore, if an intent to impose absolute liability plainly appears in a non-

Crimes Code statute, any culpability requirement for conviction is eliminated. In addition, if the statute was enacted subsequent to the Crimes Code and is explicitly graded as something other than a summary offense, then even if it imposes absolute liability it will not be treated as a summary offense.

In determining whether the intent to impose absolute liability plainly appears in the vehicle homicide statute, we note that whether a given statute is to be construed as requiring criminal intent is a matter to be determined by the court, by considering the subject matter of the prohibition as well as the language of the statute, and thus ascertaining the intent of the legislature: Com. v. Bready, 220 Pa. Superior Ct. 157, 286 A. 2d 654 (1971); Com. v. Black, supra.

Statutes containing language similar to that in the vehicle homicide statute, and also significant in that they are not part of the Crimes Code, have been interpreted in Com. v. Jade East, 237 Pa. Superior Ct. 140, 346 A. 2d 562 (1975), and Com. v. Grant, 235 Pa. Superior Ct. 357, 341 A. 2d 511 (1975). Waldron Appeal, supra, and its progeny, relied upon by defendant, are readily distinguishable since those cases all involve provisions of the Crimes Code which are subject to the general culpability requirements of section 302 of the code. Non-code statutes are not subject to section 302 if a legislative intent to impose absolute liability "plainly appears."

In Jade East, defendants were charged with violating provisions of the Liquor Code of April 12, 1951, P.L. 90, as amended, which make it unlawful to serve alcoholic beverages to minors[5] and to

5. 47 P.S. §4-493(1).

permit minors to frequent the premises.[6] The court held that these provisions of the Liquor Code imposed absolute liability because the prohibited acts were unlawful in and of themselves, that the legislative intent to impose absolute liability plainly appeared even though the statutes did not explicitly exclude a culpability element, and that no guilty knowledge was required for conviction.

In Grant, defendant was charged with violating section 624(5) of the former Vehicle Code of April 29, 1959, P.L. 58, 75 P.S. §624(5), which made it unlawful to use a motor vehicle without the knowledge or consent of the owner. The court found no guilty knowledge was required even though the statute did not explicitly impose absolute liability. Section 624(5) was subsequently deleted from the new Vehicle Code and included as section 3928 of the Crimes Code, and thus is now subject to the culpability requirements of section 302 of the Crimes Code: Waldron Appeal, supra. But Grant is still valid precedent in interpreting non-Crimes Code absolute liability statutes.

Further, it has been held that the Vehicle Code is a police regulation designed to promote the health and safety of the public. See Maurer v. Boardman, 336 Pa. 17, 7 A. 2d 466 (1939); Com. v. Abraham, 7 Pa. Commonwealth Ct. 535, 300 A. 2d 831 (1973). Violations thereof are the type of purely statutory offenses in which absolute liability has traditionally been allowed. See Com. v. Koczwara, 397 Pa. 575, 155 A. 2d 825 (1959). As stated in Com. v. Hartzell, 44 Northampton 42, 45-46 (1979): "[t]he language of the [vehicle homicide] statute, the distinguishing of traffic-related deaths from the crime

---

6. 47 P.S. §4-493(14).

of involuntary manslaughter, and the placement of the statute within the Vehicle Code clearly indicate a legislative intent to eliminate the requirement of culpability and to impose absolute liability."

Having determined that the intent to impose absolute liability plainly appears, and finding that the vehicle homicide statute was enacted subsequent to the Crimes Code and that it is explicitly graded as a misdemeanor, it is clear that vehicle homicide is not to be treated as a summary offense.

In addition, even though the vehicle homicide statute of itself imposes no culpability requirement, the underlying summary offenses in this case, namely reckless driving and following too closely, required proof of the culpability elements of recklessness and negligence respectively. For this additional reason, we conclude that vehicle homicide is not to be deemed a summary offense: 18 Pa.C.S.A. §305(b)(2). See Com. v. Jade East, supra.

Defendant next asserts that the instructions relative to reckless driving were incorrect. The charge consisted of a recitation of the reckless driving statute: (77 Pa.C.S.A. §3714), and of the definition of "reckless" contained in 18 Pa.C.S.A. §302(3). While the charge did not contain the classic language that reckless driving requires something less than willful and wanton conduct yet more than mere negligence (see Com. v. Forrey, supra) the "gross deviation" language contained in the section 302(b)(3) definition of "reckless" conveyed the same meaning, and indeed may have suggested a need for a greater degree of culpability than the classic definition. Thus, if anything, the trial judge went further than defense counsel requested.

Defendant next takes issue with several other portions of the jury instructions. First, he claims it

was error to have refused to charge that, if the jury would have found Mrs. Fessmeyer or the decedent to have violated any rules of the road, as, for example, by driving at less than the minimum legal speed, and concluded that such conduct contributed in a "substantial way" to the death, the jury was obliged to acquit defendant. Instead, the trial judge charged the jury that in order to find guilt they had to find that the conduct of Mrs. Fessmeyer or the decedent did not diminish defendant's responsibility for the death to such an extent that defendant's acts were no longer the "direct cause" of the death. This "direct cause" language is a more accurate statement of the law of criminal causation than defendant's requested language, and thus the charge was correct. See Com. v. Clowser, 212 Pa. Superior Ct. 208, 239 A. 2d 870 (1968); Com. v. Sisca, 245 Pa. Superior Ct. 125, 369 A. 2d 325 (1976); Com. v. Root, 403 Pa. 571, 170 A. 2d 310 (1961).

Further, defendant asserts error in the refusal to charge that persons towing vehicles are governed by a high standard of care. This request was properly refused because the standard of care applicable to the victim of a criminal act is irrelevant in a criminal action. The victim's conduct is relevant only insofar as it tends to remove the defendant's acts as the direct cause of death, and this concept was properly explained to the jury.

Finally, defendant objects to the trial court's statement in the charge that it is not unlawful to tow a disabled vehicle on the highway. That was certainly a correct statement of the law and we are not persuaded as to how it prejudiced defendant. It did not amount to any kind of total endorsement or absolution of decedent's conduct in that the portion

of the charge directly following clearly indicated that decedent's conduct could be considered by the jury and conceivably found to absolve defendant as the direct cause of death.

Defendant's fifth contention is that since the collision and the summary offenses of reckless driving and following too closely occurred on September 7, 1977, and charges were not filed with the district magistrate until September 26, 1977, the prosecution failed to comply with section 6302 of the Vehicle Code (now 42 Pa.C.S.A. §5553), which provides in relevant part: "(b) Minor offenses—Except as provided in subsection (c), proceedings for summary offenses under the following provisions of Title 75 shall be instituted within 15 days after the commission of the alleged offense or within 15 days after the discovery of the commission of the offense . . . , whichever is later, and not thereafter . . ."

The testimony of Pennsylvania State Trooper Kupec, who was stationed at a state police barracks in the Philadelphia area, at the pretrial hearing indicates that for approximately two weeks after the incident he tried repeatedly but unsuccessfully to reach witness Margaret Delaney by telephone in Wilkes-Barre in order to obtain more information about the collision. Although Mrs. Delaney had been interviewed by another trooper at the collision scene, Trooper Kupec testified that he needed additional information to determine whether prosecution should be undertaken. Defendant's argument is that the statutory language "15 days after discovery of the commission of the offense" applies only to offenses ordinarily not discoverable upon commission and does not contemplate giving police extra time to collect information which they should have collected initially.

However, the current statute, unlike section 1201(a) of the prior Vehicle Code of April 29, 1959, P.L. 58, makes no distinction between offenses ordinarily discoverable and those ordinarily not discoverable upon commission. The crucial question, then, is what is meant by "discovery of the offense" in this context. While no Pennsylvania cases have been brought to our attention on this point, it is clear that defendant's cited cases interpreting old section 1201(a) are inapposite, but precedent exists in other jurisdictions. In People v. McGreal, 4 Ill. App. 3d 312, 278 N.E. 2d 504 (1971), a case involving the same statutory language as it related to a charge of official misconduct, the court stated, at 510, that "discovery . . . calls for something more than merely having certain facts available," and that "discovery" implies knowledge, not the mere suspicion of wrong. The court then quotes Mingenback v. Mingenback, 176 Kan. 471, 271 P. 2d 782, 787 (1954): "The suspicion may be such as to call for further investigation, but is not of itself a discovery."

Prior to the delayed questioning of Mrs. Delaney the state police only suspected the possible commission of an offense and Trooper Kupec's determination to pursue from an eyewitness information as to defendant's speed and whether he had applied his brakes and otherwise endeavored to avoid the collision was entirely appropriate before making the determination to prosecute. Therefore, "discovery of the offense" occurred after Trooper Kupec's interview of Mrs. Delaney. We conclude that law enforcement personnel diligently pursued the investigation, and, indeed, the police are to be commended rather than criticized for wanting to assure themselves that it was appropriate to prosecute. Section 6302 does not require that police

complete their accident investigation and make a determination of criminal liability at the accident scene.

Defendant's sixth contention is that the information charging him with vehicle homicide violates Pa.R.Crim.P. 225(c) in that it makes no mention of the specific underlying summary offenses of reckless driving and following too closely.

Rule 225(c) states: "The information shall contain the official or customary citation of the statute and section thereof, or other provision of law which the defendant is alleged therein to have violated; but the omission of or error in such citation shall not affect the validity or sufficiency of the information." There was no violation of Rule 225. An indictment or information should not be quashed except in a clear case: Com. v. Viscount, 118 Pa. Superior Ct. 595, 179 Atl. 858 (1935). The Act of March 31, 1860, P.L. 427, sec. 11, 19 P.S. §261, states that every indictment shall be sufficient if it charges the crime in substantially the language of the statute prohibiting the crime, which is precisely what was done in this case for the crime of vehicle homicide. Pursuant to Pa.R.Crim.P. 232, this statute applies to informations as well as indictments.

Moreover, it has been held in analogous situations that an indictment for burglary need not mention the underlying felony, Com. v. Wilks, 250 Pa. Superior Ct. 182, 378 A. 2d 887 (1977), and that indictments for felony-murder need not mention the underlying felony: Com. v. Bastone, 466 Pa. 548, 353 A. 2d 827 (1976). Also, defendant could have sought a bill of particulars if he was unclear as to the nature of the underlying offenses: Pa.R.Crim.P. 304; see Com. v. Mitchell, 73 D. & C. 2d 472 (1975).

Defendant's seventh and final contention is that

the vehicle homicide statute is unconstitutional for vagueness. The standard for judging a statute so attacked appears in Com. v. Heinbaugh, 467 Pa. 1, 5, 354 A. 2d 244, 246 (1976): "A criminal statute must give reasonable notice of the conduct which it proscribes to a person charged with violating its interdiction. Statutes which are so vague that they fail to provide such notice violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." In addition to the presumption of constitutionality which inures to the Commonwealth's benefit (see Statutory Construction Act, 1 Pa.C.S.A. §1922(3)), the defense has failed to persuade us that this statute is vague and in that respect we agree with the recent Northampton County decision in Com. v. Gotto, (No. 2174-1977, filed February 26, 1979). The statute provides with clarity that where any person's violation of a traffic ordinance or statute is the direct cause of a death, vehicle homicide lies. It cannot be said of this statute that people of common intelligence need speculate at its meaning or differ as to its application: Com. v. Tarabilda, 222 Pa. Superior Ct. 237, 294 A. 2d 830 (1972). Additionally, the statutory provisions relative to the underlying summary offenses in this case have been held constitutional: Com. v. Klick, 164 Pa. Superior Ct. 449, 65 A. 2d 440 (1949); State v. Bush, 182 N.E. 2d 43 (C.P. Ohio), aff'd. 193 N.E. 2d 195 (Ohio App. 1962). Merely because a perpetrator may be surprised to learn that his conduct rises to the level of a first degree misdemeanor or that the legal profession is obliged to contend with a new offense does not, contrary to what defendant seemingly suggests, render the statute vague. We conclude that the homicide by vehicle statute is constitutional.

Defense counsel also obliquely argues that im-

posing what he characterizes as harsh criminal penalties for an absolute liability offense is somehow unconstitutional, on the theory that to do so smacks of cruel and unusual punishment. This is especially so, he contends, since the penalty for vehicular homicide is the same as for involuntary manslaughter even though the culpability requirements for the latter are greater. This argument is without merit because it has consistently been held that the legislature may impose an absolute liability standard and may impose substantial penal sanctions for violations of such standards if it determines the harm posed by the proscribed conduct justifies the adoption of such a standard: Com. v. Grant, 235 Pa. Superior Ct. 357, 341 A. 2d 511 (1975); Com. v. Yaple, 217 Pa. Superior Ct. 232, 273 A. 2d 346 (1970); Com. v. Noga, 37 Lehigh 525 (1978).

For all of the above reasons, we conclude that his contentions are without merit and we are obliged to dismiss defendant's motions for a new trial and in arrest of judgment.

## ORDER

Now, April 2, 1979, for the reasons appearing in the foregoing opinion, and following consideration of the briefs and oral argument, it is ordered that defendant's motions in arrest of judgment and for a new trial be and the same are hereby denied and dismissed and defendant is directed to appear for sentencing in Courtroom No. 3 on May 15, 1979. The Lehigh County Probation Office is to prepare a presentence investigation and report.