**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Nicolle Margot TARRACH, Appellant.**

Superior Court of Pennsylvania.

Submitted March 12, 2012.
Filed April 9, 2012.

Brie R. Halfond, Reading, for appellant.

Alisa R. Hobart, Assistant District Attorney, Reading, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., LAZARUS and WECHT, JJ.

OPINION BY WECHT, J.:

Nicolle M. Tarrach ["Appellant"] appeals from the judgment of sentence entered September 27, 2011. We affirm.

The trial court summarized the facts as follows:

On April 30, 2009, at approximately 4:03 p.m., Officer Chad Vargo of the South Heidelberg Township Police Department was dispatched to the area of Penn Avenue at the intersection of Green Valley Road in South Heidelberg Township, Berks County, PA, for a two vehicle crash. Upon arrival, Officer Vargo

made contact with the drivers of both vehicles involved in the crash.

Constantine Pappas ("Mr. Pappas"), the victim and driver of the vehicle that was struck by [Appellant]'s vehicle, testified that immediately after the collision he observed [Appellant] approach his vehicle with an unsteady gait. He further testified that [Appellant]'s eyes were glassy and that her speech was slurred. Officer Vargo testified that upon making contact with [Appellant], who was the driver of the striking vehicle, he also observed her to have an unsteady gait. [Appellant] subsequently refused medical treatment. [Appellant] informed Officer Vargo that she had consumed prescription drugs earlier that day. Based on his training and experience, along with his observations of [Appellant]'s appearance, speech, and gait, Officer Vargo believed that [Appellant] may have been under the influence of drugs to a degree which rendered her incapable of safely driving. Officer Vargo administered a series of standard field sobriety tests (hereinafter "SFSTs") on [Appellant]. Officer Vargo testified that [Appellant] failed the SFSTs and that she exhibited signs of drug intoxication through the SFSTs. At that time, Officer Vargo placed [Appellant] under arrest for suspicion of driving under the influence. [Appellant] was transported to St. Joseph's Hospital for her blood to be drawn.

Dr. Laura Labay, a board certified forensic toxicologist, testified as to the results of the toxicology testing performed on blood samples collected from [Appellant] on April 30, 2009. At trial,

Dr. Labay testified that the first toxicology detected Alprazolam, a benzodiazepine that's called Xanax, at a concentration of twenty-nine (29) nanograms per milliliter. Additionally, Dr. Labay testified that a subsequent toxicology report detected Amphetamine at a concentration of one-hundred and fifty (150) nanograms per milliliter, Citalopram at a concentration of three hundred and twenty (320) nanograms per milliliter, Hydroxyzine at a concentration of fifty-eight (58) nanograms per milliliter, Oxycodone at a concentration of ninety-two (92) nanograms per milliliter, and Topitamate at a concentration of fifteen (15) micrograms per milliliter. Dr. Labay further testified that the aforementioned drugs are all prescription drugs. Lastly, Dr. Labay testified that although the level of drugs in [Appellant]'s system on the date in question may have been within the therapeutic range, it was her professional opinion that due to the adverse effects of some of said drugs, [Appellant] was incapable of safely operating a motor vehicle on the date and time in question.

Trial Court Opinion ["T.C.O."], 12/5/11, at 2–4.[1]

Appellant was charged with driving under the influence[2] and following too closely.[3] On June 20, 2011, a bench trial began. It concluded on September 27, 2011. Appellant was found guilty on both counts. On the DUI count, she was sentenced to seventy-two hours to six months in county jail, plus a $1000.00 fine. Notes of Testimony ["N.T."], 9/27/11, at 48–49. On the following too closely count, Appellant was ordered to pay a $25.00 fine. N.T., 9/27/11, at 49. This appeal followed.[4]

1. The trial court's opinion is not paginated. We identify page numbers here for ease of reference.

2. 75 Pa.C.S.A. § 3802(d)(2).

3. 75 Pa.C.S.A. § 3310(a).

4. On October 20, 2011, the trial court ordered Appellant to file a concise statement of errors

■ Appellant raises two issues for our consideration:

1. Whether the evidence was insufficient to support the guilty verdict for driving under the influence of a controlled substance, 75 Pa.C.S.A. § 3802(d)(2), where the Commonwealth failed to prove beyond a reasonable doubt that Appellant was under the influence of a combination of drugs to a degree which impaired her ability to safely drive a vehicle.

2. Whether the evidence was insufficient to support the guilty verdict for following too closely, 75 Pa. C.S.A. § 3310(a), where the Commonwealth failed to prove beyond a reasonable doubt that Appellant followed another vehicle more closely than was reasonable and prudent.

Appellant's Brief at 5.

Both of Appellant's issues raise a challenge to the sufficiency of the evidence. Our standard of review is well-settled:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's

burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley,* 14 A.3d 887, 889–90 (Pa.Super.2011) (quoting *Commonwealth v. Mollett,* 5 A.3d 291, 313 (Pa.Super.2010)).

Appellant first challenges the sufficiency of the evidence supporting the verdict for driving under the influence. Appellant was found guilty of 75 Pa.C.S.A. § 3802(d)(2), which states:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

\*      \*      \*

■ (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

This section does not require proof of a specific amount of a drug in the driver's system. It requires only proof that the driver was under the influence of a drug or combination of drugs to a degree that the ability to drive is impaired. *Commonwealth v. Williamson,* 962 A.2d 1200, 1204 (Pa.Super.2008). Expert testimony is not required. *Commonwealth v. Griffith,* 32 A.3d 1231, 1238 (Pa.2011).

In *Williamson,* a police officer found the driver slumped over the steering wheel and observed that she had bloodshot eyes, was lethargic, and had slow, incoherent speech. *Williamson,* 962 A.2d at 1201–02.

complained of on appeal pursuant to Pa.      R.A.P. 1925(b). Appellant timely complied.

The driver failed two field sobriety tests. A urine screen was positive for prescription drugs. *Id.* at 1202. We held that testimony of erratic driving, coupled with proof that drugs were present, were together sufficient to prove that the operator's ability to drive safely was impaired. *Id.* at 1204. More recently, in *Griffith,* witness observations of erratic driving, police observations of the driver, failed field sobriety tests, and prescription drugs in the driver's system, together sufficed to prove driving under the influence. *Griffith,* 32 A.3d at 1233–34. Our Supreme Court held that the relevant inquiry was whether the drugs in the driver's system were impairing the person's ability to drive. The Court found that police observations and a failed sobriety test sufficed to satisfy the inquiry, even without expert testimony. *Id.* at 1240.

Appellant admits that she was driving, and that she had taken prescription drugs. Appellant's Brief at 15. However, she argues that her ability to drive was not impaired by those substances. *Id.* Appellant contends that she failed the field sobriety tests and walked unsteadily due to osteoarthritis in her knee. Appellant's Brief at 16. Appellant argues that Dr. Labay, the toxicologist, never testified that the drugs which Appellant took deprived her of the capacity to drive safely. *Id.* Appellant maintains that her confusion after the accident is explained by her attention deficit disorder, a condition testified to by her physician. Appellant's Brief at 17. Appellant also asserts that she was sleep-deprived because her father had died shortly before the accident, so that any perceived inability to drive safely was due to fatigue rather than drugs. Appellant's Brief at 17–19.

The Commonwealth responds that Appellant's grogginess was caused by her medications, and that there was ample evidence from multiple sources indicating that the medication which Appellant consumed had rendered her unable to drive safely. Appellee's Brief at 11.

Under our standard of review, we must view the facts in the light most favorable to the Commonwealth as verdict winner. Having done so, we conclude that the evidence was sufficient to permit the trial court to find that Appellant drove while under the influence. There was testimony that Appellant stated that her medication made her groggy. N.T., 6/20/11, at 9, 11. A witness who drove with Appellant earlier that day testified that, in the morning, Appellant almost hit a car and was drifting out of her lane. N.T., 6/20/11, at 10. After the accident, Appellant could not walk straight, was holding her car to stay balanced, and had glassy eyes and slurred speech. N.T., 6/20/11, at 21–23, 29. The police officer who responded to the accident testified that Appellant was dazed and confused, had an unsteady gait, and admitted to taking prescription drugs. N.T., 6/20/11, at 34–35, 37. The officer also testified that Appellant said that Mr. Pappas, the other driver, "had come out of nowhere" and had caused the accident. N.T., 6/20/11, at 36. Appellant failed three field sobriety tests. N.T., 6/20/11, at 38–41.

Dr. Labay testified that the drugs identified in Appellant's blood tests were within therapeutic ranges. N.T., 6/20/11, at 51–57. However, Dr. Labay also testified that three of the drugs cause drowsiness, and that taking them in combination can increase that side-effect. N.T., 6/20/11, at 58. Dr. Labay opined that Appellant was unable to drive safely due to the combination of drugs that Appellant had consumed. N.T., 6/20/11, at 62–63. Dr. Labay testified that her opinion would not differ if there was evidence that Appellant had developed a tolerance to the drugs or if there

was evidence that Appellant was sleep-deprived. N.T., 6/20/11, at 71–72.

The trial judge, acting as fact-finder, returned a guilty verdict. The evidence was sufficient to support the court's finding that the Commonwealth met its burden of proving driving under the influence beyond a reasonable doubt.

Appellant next challenges the sufficiency of the evidence to support the verdict for following too closely. Appellant was found guilty of violating 75 Pa.C.S.A. § 3310(a), which states: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway."

Appellant argues that Section 3310(a) has not been applied in the type of situation presented by this case. Appellant maintains that she cannot have been "follow[ing]" Mr. Pappas' car, inasmuch as his car already was stopped or was stopping at a traffic signal. Appellant argues that she could not have been following in the sense of "tailgating," and that tailgating is the evil that the statute targets. Appellant's Brief at 21. Appellant maintains that, if Mr. Pappas' car was stopped or stopping, Appellant could not have been following it too closely under the plain language of the statute.

The Commonwealth responds that Mr. Pappas was slowing his car but was not yet stopped, that Appellant was following Mr. Pappas too closely, and that Appellant collided with Mr. Pappas. Appellee's Brief at 9. The trial court found the facts. It deemed the Commonwealth's evidence sufficient based upon the totality of the circumstances, including Mr. Pappas' testimony that he was hit after he noticed Appellant's car approaching, and the testimony of Tracy Izzey, Mr. Pappas' passenger, about the conditions of the road that day. T.C.O. at 7.

At the outset, we observe that we previously have held that Section 3310(a) is unambiguous, and that the statute is to be construed according to the plain meaning of its words. *Bybel,* 779 A.2d at 524. Following is defined as "coming next in time or order." *Webster's New College Dictionary* 443 (3d ed.2008). Plainly, Appellant was following Mr. Pappas' car.

It cannot be gainsaid that most cases interpreting this statute have involved tailgating situations that did not result in accidents. Examples include a case in which a state trooper who had observed a vehicle traveling around sixty-five miles per hour and approximately two to three feet behind a truck testified that the vehicle could not have avoided a collision if the truck had stopped suddenly. *Commonwealth v. Bybel,* 779 A.2d 523, 524–25 (Pa.Super.2001). Similarly, there was sufficient evidence to support a conviction under the statute when a police officer had testified to observing one car follow another too closely. *Commonwealth v. Owens,* 427 Pa.Super. 379, 629 A.2d 150, 153 (1993).

Nonetheless, we take note of a collision case somewhat similar to this one and involving the same statute. *Commonwealth v. Kishbaugh,* 11 Pa. D. & C.3d 146 (C.P. Lehigh 1979). In *Kishbaugh,* a passenger was killed when a truck driver collided with a car that was in front of his truck. *Kishbaugh,* 11 Pa. D. & C.3d at 148–50. There was evidence that the road was clear and straight, that visibility was excellent, that there were no skid marks on the road indicating the truck slowed prior to the collision, and that the truck's brake lights did not come on prior to the collision. *Id.* at 149. Sitting *en banc,* the common pleas court concluded that the evidence indicated the truck driver was so

inattentive that he approached and followed the car more closely than was reasonable and prudent. *Id.*

 Although not binding upon us, the rationale in *Kishbaugh* strikes us as persuasive. Mr. Pappas testified that, as he was slowing down at an intersection, he was hit from behind, and his rear window was shattered. N.T., 6/20/11, at 19. He further testified that his car was pushed into the other lane, but that he was able to regain control and pull his car over to the shoulder. *Id.* Mr. Pappas said that, when he looked in his rearview window, as he was slowing, Appellant's car "just [kept] coming." N.T., 6/20/11, at 20. The crash was significant enough that the back of Mr. Pappas' car was crushed and "the back of the car came almost to the back of [the driver's] seat." N.T., 6/20/11, at 19. Testimony indicated that the road was clear and that visibility was fine. N.T., 6/20/11, at 20, 28, 34. The evidence, both direct and circumstantial, sufficed to support the trial court's conclusion that this accident only could have occurred if Appellant was so inattentive to the road that she approached and followed Mr. Pappas' car more closely than would a reasonable and prudent person.

We are unable to agree with Appellant's suggestion or implication that Section 3310(a) may never apply to collision cases. We are constrained to observe that the statute does not prevent following too closely simply because close following is an evil unto itself or because it is an aesthetic affront. Rather, the purpose of the statute is to prevent accidents. Requiring a reasonable and prudent distance allows a driver to stop or take evasive maneuver if the vehicle in front stops or slows suddenly. *Commonwealth v. Phinn,* 761 A.2d 176 (Pa.Super.2000).

 It would of course be nonsensical for the law to prohibit following too closely

when there is no collision, while simultaneously decriminalizing the same unsafe conduct when it goes so far as to result in the crash that the statute seeks to prevent. We decline to construe the statute in such a counterintuitive fashion. Where the fact-finder determines that following too closely caused a collision, and that finding is supported by the record, we will not disturb it.

Had Mr. Pappas testified that he was stopped at the time of the accident, Appellant's argument might carry more weight. However, Mr. Pappas testified that he was still moving, although slowing down, at the time of the accident. Additionally, Mr. Pappas testified that Appellant did not slow down as she approached his car. Mr. Pappas' testimony provided direct evidence of following too closely. The trial court, as fact-finder, was entitled to credit that testimony. Appellant was required to follow only as closely as was reasonable and prudent given Mr. Pappas' speed. The evidence was sufficient to sustain the trial verdict.

Judgment of sentence affirmed.