J-S22017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENDELL CHARLES FOSTER | |
| Appellant | No. 1281 WDA 2014 |

Appeal from the Judgment of Sentence November 26, 2013
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001224-2013

BEFORE:  PANELLA, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                          **FILED JUNE 05, 2015**

Kendell Charles Foster appeals from the judgment of sentence imposed by the Court of Common Pleas of Erie County, following his convictions for attempted homicide,[1] aggravated assault,[2] possessing an instrument of crime,[3] burglary,[4] three counts of recklessly endangering

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901, 2501(a).

[2] 18 Pa.C.S. § 2702(a).

[3] 18 Pa.C.S. § 907(a).

[4] 18 Pa.C.S. § 3502(a)(i).

another person,[5] robbery,[6] and conspiracy to commit robbery.[7] Upon

review, we affirm in part, vacate in part, and remand for resentencing.

The trial court set forth the facts of this case as follows:

[Foster] was one of three armed intruders wearing hoodies and masks who kicked in the door of Robert Gore's apartment in the City of Erie on December 20, 2012.

Upon entry, the invaders confronted an occupant in the living room, Ledomperignon Eady, stuck a gun in his face and told him not to move. They were in the process of grabbing Eady by the leg and relocating him when they were distracted by noises in Gore's bedroom. They let go of Eady and headed to Gore's bedroom. Once freed, Eady hid in a closet near the living room.

At that time, Robert Gore was in his bedroom along with Shawanda Zigler. When Zigler heard their apartment door being kicked in, she immediately hid in the closet in Gore's bedroom.

From his vantage point, Eady could see some of what was occurring in Gore's bedroom as reflected in a mirror in Gore's bedroom. These observations were made through a crack in the closet door. Eady heard two shots being fired in Gore's bedroom.

Gore was armed with his own gun when the three invaders entered his bedroom. There ensued a struggle over Gore's gun during which [Foster] was shot in the right, upper thigh. Gore was then shot in the chest by a person identified by [Foster] as "D." [Foster] then shot Gore at close range in the head.

After these shots, Eady heard one of the assailants being ordered to "bang the other one," meaning to shoot Eady.

_____

[5] 18 Pa.C.S. § 2705.

[6] 18 Pa.C.S. § 3701(a)(1)(ii).

[7] 18 Pa.C.S. §§ 903, 3701(a)(ii).

The three assailants then fled the apartment. Before leaving, they discussed whether both Gore and Eady had been shot. Satisfied both had been shot, the trio then ran out of the building. Eady observed one of the assailants to be limping.

Once the coast was clear, Eady immediately went to the bedroom to check on Gore, who was found unconscious and bleeding from gunshot wounds to the head and chest. Eady ran to a neighboring apartment and called the police at approximately 11:40 p.m.

Shortly after midnight on December 21, 2012, [Foster] telephoned a friend, Letonia Pearson, in Farrell, Pennsylvania. [Foster] indicated to Pearson he had been shot in the thigh in the course of a robbery and needed her assistance. [Foster] wanted Pearson to pick him up in Erie. Pearson refused to drive to Erie to pick up [Foster].

From Erie, [Foster] also telephoned another friend, Carolyn Shannon, telling her he had been shot. [Foster] told Shannon he needed a ride to Meadville, Pennsylvania. Shannon was in Conneaut, Pennsylvania at the time. Shannon borrowed a white truck from a friend, drove to Erie and picked up [Foster] at 5th and Wallace Streets in Erie.

[Foster] initially told Shannon to drive him to Meadville but then indicated she should drive instead to Farrell, PA, so he could pick up his identification cards from Pearson's house in order to seek medical treatment. Shannon drove him to Pearson's house in Farrell, Pennsylvania. [Foster] arrived at Pearson's home around 8:00 a.m. with a belt tied around his leg.

[Foster] told Pearson he and two others went to Gore's apartment to commit a robbery. [Foster] related that he and the victim, Gore, struggled over possession of a gun. During the struggle over the gun, [Foster] was shot in the thigh. [Foster] told Pearson that "D" shot Gore in the chest. [Foster] gained control of the gun from "D" and shot Gore in the head.

[Foster] wanted Pearson to remove the bullet from his leg and/or drive him to a hospital across the state line in Ohio. Pearson cleaned the wound but refused to drive him to Ohio or render any further aid.

Instead, as she was on supervision and did not want to get into any trouble, Pearson contacted her probation officer, Timothy

Cox. Pearson related the circumstances to Cox, who came to her home with the Farrell police.

[Foster] was arrested at Pearson's home by the Farrell Police Department, who then notified the authorities in Erie, PA. The Erie police drove to Farrell and met with the Farrell police.

Thereafter, [Foster] related to Detective Paul Bizzarro of the Erie Police Department he received the gunshot wound to his leg in the course of a robbery in New Castle, Pennsylvania.

Trial Court Opinion, 3/24/14, at 1-3 (citations omitted).

A two-day jury trial commenced on September 24, 2013, at the conclusion of which Foster was found guilty of the aforementioned offenses. On November 26, 2013, the court sentenced Foster to an aggregate term of 45 to 90 years' incarceration to be followed by 48 months of probation. Foster did not file any post-sentence motions. On December 24, 2013, Foster filed a notice of appeal to this Court. Foster filed a Pa.R.A.P. 1925(b) statement on February 10, 2014. However, Foster failed to clearly identify his appellate claims and the court ordered him to file an amended Rule 1925(b) statement, with which he complied on February 20, 2014.

On appeal, Foster challenges the sufficiency of the evidence sustaining each of his convictions.[8] Our standard of review for sufficiency of the evidence claims is well settled:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a

_____

[8] Foster states that he challenges the sufficiency of the evidence for each of his convictions. However, he fails to present any argument pertaining to his conviction for burglary. Accordingly, we will not address the sufficiency of the evidence sustaining Foster's conviction for burglary.

- 4 -

light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012) (citations omitted).

We begin by addressing Foster's alibi defense that he was shot during a robbery in New Castle, Pennsylvania and not in Erie, Pennsylvania. However, Foster's actions following the home invasion clearly place him in Erie on December 12, 2012. The Commonwealth presented evidence that shortly after midnight, Foster called Shannon and Pearson, asking them to pick him up in Erie because he had been shot. Foster told Pearson that he was among three individuals who entered a home in Erie with the intent to commit robbery. Furthermore, Shannon testified that she picked Foster up at Fifth and Wallace Streets in Erie. Given the totality of the evidence, the jury had a sufficient basis to place Foster at Gore's apartment in Erie.

Regarding his challenge to the sufficiency of the evidence sustaining his conviction for attempted homicide, Foster claims that the Commonwealth failed to establish the element of intent.

Pursuant to Pennsylvania statute, "[a] person commits attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901. Further, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501. Additionally, "[t]he use of a deadly weapon on a vital part of the human body is sufficient to establish the specific intent to kill." **Commonwealth v. Randolph**, 873 A.2d 1277, 1281 (Pa. 2005).

Here, the Commonwealth presented evidence that Foster shot Gore in the head, including Foster's admission to Pearson that he was present in the apartment and shot Gore in the head. N.T. Trial, 9/25/13, at 11. Foster's admission that he is used a deadly weapon on Gore's head, in conjunction with evidence of Gore's chest and head wounds, is sufficient to sustain a conviction for attempted homicide. **See Randolph**, **supra**.

Foster next challenges the sufficiency of the evidence sustaining his conviction for aggravated assault. Pursuant to Pennsylvania statute, "[a] person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1).

The only argument Foster offers in support of this claim is that the Commonwealth failed to prove that he was at or around Gore's apartment on the night in question. As we have already stated, the record belies

Foster's claim that he was in New Castle on December 12, 2012. Regarding his challenge to the sufficiency of the evidence sustaining his conviction for aggravated assault, based on the same facts detailed above, it is clear that the Commonwealth presented sufficient evidence to find beyond a reasonable doubt that Foster caused serious bodily injury to Gore when he shot him in the head.

Foster next challenges the sufficiency of the evidence sustaining his conviction for possession of an instrument of crime. Pursuant to Pennsylvania statute, "[a] person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a).

Foster argues that the Commonwealth failed to present any evidence that he possessed an instrument of crime. While the Commonwealth may not have presented any physical or forensic evidence of possession, it did present overwhelming evidence of Foster shooting Gore in the head. **See** N.T. Trial, 9/25/13, at 11. This circumstantial evidence is sufficient to sustain a conviction for possession of an instrument of crime. **Tarrach**, **supra**.

Foster also challenges the sufficiency of the evidence sustaining his convictions for recklessly endangering another person. Pursuant to Pennsylvania statute, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place

another person in danger of death or seriously bodily injury." 18 Pa.C.S. § 2705.

In support of this claim, Foster again argues that the Commonwealth failed to prove that Foster was at or around Gore's apartment on the night in question. Foster offers no other argument regarding the sufficiency of the evidence sustaining this conviction.

As we have already stated, the record belies Foster's claim that he was in New Castle on December 12, 2012. Because Foster presents no further argument on this issue, we decline to review the merits of his challenge to the sufficiency of the evidence sustaining his conviction for recklessly endangering another person.

Lastly, Foster challenges the sufficiency of the evidence sustaining his convictions for robbery and conspiracy to commit robbery. Pursuant to Pennsylvania statute, "[a] person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 903(a)(1). Further,

> [a] person is guilty of conspiracy with another person or persons to commit a crime if, with the intent of promoting or facilitating its commission, he agrees with such other person or person that they or one or more of them will engage in conduct which constitutes such crime or an attempt to solicitation to commit such crime.

18 Pa.C.S § 903(a)(1).

We agree with Honorable William R. Cunningham's astute observation that, upon review, the evidence was insufficient to convict Foster of robbery and conspiracy to commit robbery. As Judge Cunningham explained,

> The record is devoid of any evidence of a robbery or a conspiracy to commit robbery as alleged by the Commonwealth. . . . While [Foster] told Pearson there was an intent to commit a robbery, the Commonwealth's evidence does not reveal a substantial step towards the commission of a theft or an overt act in furtherance of a conspiracy to commit a robbery. The Commonwealth's eyewitnesses, Eady, Zigler and Gore, did not testify about any theft, attempted theft, or an overt act in furtherance of an agreement to rob. None of these witnesses testified that anything was stolen. The assailants may have the *mens rea* for robbery, but there is no *actus reus* to establish the elements of robbery or conspiracy. Accordingly, the guilty verdicts for robbery and conspiracy to commit robbery should be vacated.

Trial Court Opinion, 3/24/14, at 13.

Even when viewing the facts in a light most favorable to the Commonwealth as verdict winner, there is insufficient evidence in the record to enable the trier of fact to find every element of robbery and conspiracy to commit robbery beyond a reasonable doubt. ***See Tarrach***, ***supra***. Accordingly, we vacate these convictions.

Judgment of sentence affirmed on the charges of possession of an instrument of crime, attempted homicide, aggravated assault, and recklessly endangering another person. Judgment of sentence vacated on the charges of robbery and conspiracy to commit robbery. Case remanded for resentencing in accordance with the dictates of this Memorandum. Jurisdiction relinquished.

Judge Panella joins the majority decision.

Judge Strassburger files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/2015