J-S68010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSHA MEDINA, | |
| Appellant | No. 2511 EDA 2013 |

Appeal from the Judgment of Sentence entered January 18, 2013,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0013827-2011

BEFORE: ALLEN, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED OCTOBER 31, 2014**

Josha Medina ("Appellant") appeals from the judgment of sentence entered after the trial court convicted him of robbery, theft by unlawful taking, receiving stolen property, criminal conspiracy, carrying a firearm in public, carrying a firearm without a license, possessing an instrument of crime, and possessing a controlled substance.

At the non-jury trial, Christopher Rodriguez testified that at approximately 3:00 a.m. on September 7, 2011, he and his brother were walking along a street in Philadelphia when they were attacked by two assailants who punched and kicked them and stole their wallets and cell phones. N.T., 10/15/12, 18-21. One of the assailants had a nickel or silver colored gun with a black handle. *Id*. at 22, 25, 45, 56. When the assailants fled, Christopher Rodriguez and his brother chased them. *Id*. at 24. One of

the assailants responded by shooting Christopher Rodriguez's brother in the chest. *Id*. at 25. Christopher Rodriguez then sought the help of police, and described to Philadelphia Police Officer Padilla that the assailants had darker skin, and were each wearing a hoodie, one white and one black, and the assailant wearing the black hoodie had a goatee. *Id*. at 27-28, 44.

Philadelphia Police Officer Joseph Reilly testified to responding to a report of the shooting, and encountering two black males wearing hoodies, one of whom had a goatee, and was subsequently identified as Appellant. *Id*. at 47-50. As Officer Reilly and his partner approached the males, the other male "attempted to push passed [sic] [Officer Reilly's partner] and they got into a physical altercation." *Id*. at 50. Officer Reilly asked Appellant to put his hands on a porch railing. *Id*. at 50-51. Appellant began to comply, but while moving his hands, reached "toward his waistband area." *Id*. at 51, 64. Appellant grabbed a gun from his waist area, but "instantly dropped it to the ground." *Id*. at 51. Officer Reilly recovered the gun, which was "loaded with four live rounds." *Id*. at 52. Officer Reilly prepared the property receipt for the gun. *Id*. at 60. Additionally, a search of Appellant yielded six heroin packets labeled "American Gangster." *Id*. at 67.

Christopher Rodriguez's brother, William Rodriguez, testified to being attacked by two assailants, one who was wearing a white hoodie and one who was wearing a black hoodie. *Id*. at 69. William Rodriguez could not see the assailants' faces, but identified their skin color as black and not Latino.

- 2 -

*Id*. William Rodriguez testified that the assailants took the brothers' wallets and cell phones. *Id*. at 72. William Rodriguez pursued the assailants, and identified his shooter as the black man in the black hoodie. *Id*. at 73-76, 82.

Philadelphia Police Detective Michelle Yerkes testified to interviewing Christopher Rodriguez with Officer Padilla translating. *Id*. at 89. Detective Yerkes took Christopher Rodriguez's statement. *Id*. at 90. Christopher Rodriguez identified the gun recovered from Appellant as the gun used by one of his assailants. *Id*. at 92. Christopher Rodriguez identified one of his assailants as being a black male with a goatee. *Id*. at 106. Detective Yerkes also interviewed William Rodriguez. William Rodriguez identified his assailants as black males, one wearing a white hoodie and one wearing a black hoodie. *Id*. at 109.

Philadelphia Police Officer Padilla testified to responding to a call of a man shot, and transporting the Rodriguez brothers to Temple Hospital. N.T., 10/16/12, at 8. William Rodriguez gave Officer Padilla "a description of [the shooter as] a black male, clothing description, … black hoodie, blue jeans, thin build, and also a second male with a white hoodie, Adidas stripes on the side[.]" *Id*. at 9. Officer Padilla testified that Christopher Rodriguez gave the same description of the shooter; "he said it was the one with the black hoodie." *Id*. at 11. Christopher Rodriguez described the gun as silver and black. *Id*. At the hospital, Officer Padilla was "trying to get more information" from Christopher Rodriguez when Officer Padilla "got a call" that another police unit "had somebody stopped that fit the description" of

the assailants. *Id*. at 12. Officer Padilla then took Christopher Rodriguez to where Appellant was detained. *Id*. at 12-13. Officer Padilla testified:

> [The detaining officers] brought [Appellant] out to the side of the car, I would say, about, maybe 7 to 10 feet from where the witness was at, shined the light on [Appellant]. And he said – I asked him if this was the guy who had, in fact, robbed him and shot his brother. He said, yeah, that looks like him. He said, he had the same clothing, same body, and the same facial hair.

*Id*. at 13. In the courtroom, Officer Padilla identified Appellant as the same individual identified by Christopher Rodriguez. He also testified that Christopher Rodriguez was not "one hundred percent certain that this was the male, but he fit the description. This looks like the guy. This could be him." *Id*. at 17.

Philadelphia Police Officer Kevin Robinson testified to being on duty with his partner Officer Reilly at 3:00 a.m. on September 7, 2011, when the officers encountered Appellant and the other individual walking "shoulder to shoulder." *Id*. at 29. The officers saw no one else in the five blocks they traveled before encountering Appellant and the other individual. *Id*. at 26-28.

After hearing the above evidence, the trial court convicted Appellant of the aforementioned crimes. On January 18, 2013, the trial court sentenced Appellant to eight (8) to sixteen (16) years of incarceration, followed by four (4) years of probation. Appellant filed a timely appeal, as well as a Pa.R.A.P. 1925(b) statement. The trial court filed a Pa.R.A.P. 1925(a) opinion, which we adopt and incorporate in disposing of this appeal.

Appellant presents a single claim for our review:

DID THE TRIAL COURT ERR WHEN IT FOUND THAT THERE WAS SUFFICIENT EVIDENCE TO PROVE, BEYOND A REASONABLE DOUBT, THE CRIMINAL OFFENSES OF ROBBERY, CRIMINAL CONSPIRACY, POSSESSING INSTRUMENTS OF CRIME, THEFT BY UNLAWFUL TAKING AND RECEIVING STOLEN PROPERTY?

Appellant's Brief at 2.

In cases challenging the sufficiency of the evidence, we recognize:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa. Super. 2012).

Here, the essence of Appellant's argument is that "neither of the complaining witnesses were able to identify [Appellant] as one of the persons who robbed them." Appellant's Brief at 8, 11. Appellant asserts that "[d]ue to this lack of identification by both complainants, there is

- 5 -

reasonable doubt that [Appellant] is guilty of committing the aforementioned criminal offenses." *Id*. at 12.

The trial court addressed—and rejected—this claim prior to rendering its verdict:

> I think as far as the identification issue, which is the issue in this case, I agree that the language of the victim/witness is that, it looks like him, I'm not a hundred percent sure. But to this Court's thinking, any deficiencies in that statement where it's not absolute are more than supplemented by the other circumstances in this case or circumstantial evidence.
>
> I take into consideration you're talking about 3 o'clock in the morning, you're talking a deserted neighborhood where it's raining, you're talking a distance between the scene of the crime and the place of the stop of the accused of approximately five to seven blocks within thirty minutes of the incident. And then the other circumstances that both counsel have eluded to, the clothes, how they matched the description, the build, how they matched the description, the race, the similarity of the weapon, and the facial hair. Taking what is given in the descriptions as well as the other circumstances of time, distance, weather, from the incident, I think it's not a stretch to conclude that the persons the police stopped within 30 minutes of the incident were the persons who were responsible for the incident.

N.T., 10/16/12, at 45-46.

Given the foregoing, we conclude that Appellant's sufficiency claim is without merit. We further adopt and incorporate the December 31, 2013 trial court opinion of the Honorable William J. Mazzola in affirming Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/31/2014</u>