J-S50042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| VIKRAM YAMBA, | |
| Appellant | No. 486 WDA 2014 |

Appeal from the Judgment of Sentence entered February 12, 2013,
in the Court of Common Pleas of Fayette County,
Criminal Division, at No(s): CP-26-CR-0001536-2012

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                **FILED AUGUST 11, 2014**

Vikram Yamba ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of one count of robbery (serious bodily injury), one count of robbery (bodily injury), one count of aggravated assault (serious bodily injury), one count of aggravated assault (bodily injury), one count of simple assault, one count of recklessly endangering another person, and one count of attempt to commit theft by unlawful taking.[1]

The trial court detailed the evidence presented at trial as follows:

> Dianne Hatfield was the manager of a Citgo Food Mart located at the intersection of Route 166 and U.S. Route 40 in Brownsville, Fayette County, Pennsylvania, on April 18, 2007.  At

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii) and (iv), 2702(a0(1) and (4), 2701(a)(3), 2705, 3921(a) and 901(a).

some time early in the morning, shortly after the store opened at 4:00 A.M., two black males entered the store and stood in front of the counter. One of the actors had a gun and demanded that Ms. Hatfield give him money, but there was none to give. One of the men wore a yellow baseball-type hat and had a black tee shirt tied over his face so that only his eyes could be seen. The other had a green cap and a white tee shirt tied around his face. The man in the yellow hat also wore gloves with the fingers cut out, and had a silver gun. He demanded money, while the other man in the green cap tried to get around the counter. The man in the yellow cap fired the gun inside the store twice without hitting anything. Although she heard two gunshots, Ms. Hatfield thought the gun was not real so she tried to spray the men with a can of mace. The mace would not spray so she just threw it at them. As they left the store, the man fired the gun again, hitting the store's door, causing it to shatter. He then fired again while he was in the parking lot and was crossing the road. Both of the men got into the back of a white vehicle and escaped on Route 166 towards its intersection with Simpson Road. Ms. Hatfield returned to the store and called the police.

Pennsylvania State Police Trooper David J. Hamer was one of the officers who responded to the call of the attempted robbery. Near the intersection of Route 166 and Simpson Road, the officers recovered several pieces of clothing, including ball caps. The recovered items included a black tee shirt, a yellow Pittsburgh Pirates ball cap, the gloves with the cut-out fingers, a white tee shirt, and a green New York Yankees baseball cap. These items were taken back to the scene of the crime, where they were turned over to the lead investigator, Trooper Fred Gregg, who packaged them as evidence and submitted them to the DNA lab for analysis. Also collected and submitted was a metal projectile found inside the store. The submission was made by Trooper Gregg on April 18, 2007, at 1:10 P.M., and was sealed again after the testing by a Tami Kloes on July 17, 2007, at 9:43 A.M.

In September of 2010, Trooper Thomas Hartley was assigned as a criminal investigator at the Belle Vernon barracks, and in the Spring of 2011 he applied for and obtained a search warrant for [Appellant's] DNA in the form of a buccal swab. The DNA sample was collected on September 8, 2011. Commonwealth witness Sara Kinneer, a forensic supervisor in

- 2 -

the serology trace section of the state police crime lab in Greensburg, Pennsylvania, prepared [Appellant's] buccal collector for DNA analysis and created the paperwork for its submission to the DNA laboratory. Witness Julia Brolley, a forensic scientist with the state police DNA laboratory, testified that she started the analysis of the buccal swab on September 14, 2011. She then compared that DNA profile to the profile she obtained from testing the cuttings from a baseball cap, and determined that they came from the same individual. On recall to the stand, witness Kinneer told the jury that Ms. Brolley had performed her analysis on the yellow baseball cap, on a cutting she took from the sweatband area.

Trial Court Opinion, 6/18/13, at 1-3 (citations to notes of testimony omitted). Appellant was charged with the aforementioned crimes, and a jury trial commenced on January 7, 2013. On January 8, 2013, the jury returned its guilty verdicts.

On February 12, 2013, following a hearing, the trial court sentenced Appellant to an aggregate term of imprisonment of five (5) to twelve (12) years. Appellant filed a post-sentence motion on February 26, 2013, which the trial court denied. Appellant filed a notice of appeal with this Court on May 16, 2013, and filed a Pa.R.A.P 1925(b) statement of errors complained of on appeal as instructed by the trial court. On June 18, 2013, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a). On December 27, 2013, this Court dismissed the notice of appeal for failure of counsel to file a brief on Appellant's behalf. On January 21, 2014 Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. The trial court appointed counsel, who filed an amended PCRA petition on March 6, 2014, seeking reinstatement of Appellant's direct appeal

rights. The trial court granted the PCRA petition and Appellant filed a *nunc pro tunc* notice of appeal on March 27, 2014. Appellant filed a Pa.R.A.P. 1925(a) concise statement on April 17, 2014, and on May 5, 2014, the trial court filed a "Statement in Lieu of Opinion" in which it explained that the issues raised in Appellant's concise statement had been addressed in its June 18, 2013 opinion.

Appellant raises the following issues for our review:

I.     Whether there was sufficient evidence to sustain the verdicts of guilty as to all charges because the Commonwealth failed to prove [Appellant's] identity as the perpetrator of the crime beyond a reasonable doubt? See *Commonwealth v. Pereria*, 280 A.2d 623 (Pa. Super. 1971)?

II.    Whether there was sufficient evidence to sustain the verdicts of guilty as to all charges because the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] utilized a weapon (handgun) in the commission of the crimes that would cause serious bodily injury?

Appellant's Brief at 4.

Appellant challenges the sufficiency of the evidence. When reviewing such challenges, we are bound by the following:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012).

In his first issue, Appellant argues that the Commonwealth failed to produce sufficient evidence to establish Appellant's identity as one of the perpetrators, to sustain his convictions. Appellant's Brief at 11-13. Specifically, Appellant claims that the DNA evidence relied upon by the Commonwealth did not provide conclusive proof of identity, because the Commonwealth's DNA testimony as to the statistical probability of Appellant being a match "lacked context and substance, rendering it essentially meaningfulness." *Id*. The trial court, however, disagreed, explaining:

> The statistical analysis provided by the Commonwealth witness who tested the sample conclusively established that [Appellant] had almost certainly worn the hat before it was found and seized by the police. The evidence of the DNA testing, and the statistical conclusions based thereon, was relevant in that it logically tended to make the alleged fact of [Appellant's] presence near the crime scene shortly after the crime's occurrence more probable, and it also supported a reasonable inference that [Appellant] had taken part in the commission of the crime. To the extent that the evidence was allegedly rendered inconclusive due to the lack of evidence as to whether any other person had deposited DNA on the hat, any such inconclusiveness, if it existed, would not diminish the relevance of the DNA evidence or cause it to be inadmissible or

- 5 -

insufficient; rather, the alleged inconclusiveness would simply implicate the weight and persuasiveness of the DNA evidence, which are matters for the jury.

Trial Court Opinion, 6/18/13, at 5 (citations omitted).

"The relevance of the DNA analysis ... is to establish the identity of the source of a DNA sample discovered at a crime scene." *Commonwealth v. Crews*, 640 A.2d 395, 401 (Pa. 1994). "If the DNA sample from the crime scene matches the DNA of an accused, it is at least evidence that the DNA discovered at the crime scene is that of the accused. If the DNA sample matches the DNA of the accused and no one else, then it, of course, conclusively establishes that the accused is the source of the DNA found at the scene of the crime. This distinction is expressed in terms of statistical probability of the match occurring randomly in the population." *Id*. "Thus, in terms of the inferential conclusion to be drawn from DNA evidence in a criminal trial—the accused as source of the DNA sample found at the crime scene—DNA analysis generally can provide only statistical probability." *Id*. The weight and persuasiveness of relevant and admissible DNA are properly matters for the jury to determine. *Id.* at 403.

Here, the jury found credible and persuasive the testimony of Julia Brolley, a forensic scientist with the Pennsylvania State Police DNA laboratory, who testified that she had been employed in DNA analysis since 2005, and explained the process by which she receives items, such as articles of clothing, containing DNA samples, extracts cells from the items,

and employs a chemical process to release the DNA to create a DNA profile. N.T., 1/7/13, at 79-80. Ms. Brolley testified that when she conducted such analysis on the DNA retrieved from the yellow baseball cap, and compared it to Appellant's DNA sample, "they matched to each other." *Id*. at 86-87. Ms. Brolley further testified that the possibility of the DNA found on the baseball cap belonging to someone else was statistically improbable with the odds being only "one in seventy-six quintillion for the African American population." *Id*.[2]

The victim, Ms. Hatfield, then testified that during the robbery, the man wearing the yellow baseball cap was carrying a gun and demanded money; Ms. Hatfield additionally identified the yellow hat on which Appellant's DNA was found as the yellow baseball cap worn by the robber. N.T., 1/7/13, 21-22, 63-64. The jury, within its province as fact finder, found credible and persuasive the testimony of Ms. Brolley and Ms. Hatfield; their testimony was sufficient to establish both Appellant's identity and his presence during the commission of the crime. We will not disturb such credibility determinations on appeal. ***See Commonwealth v. Bourgeon***,

_____

[2] The record does not reflect that Appellant objected at trial to the Commonwealth failing to lay an adequate foundation for Ms. Brolley's testimony, and to the extent Appellant raises such an evidentiary challenge for the first time on appeal, it is waived. ***See Commonwealth v. Duffy***, 832 A.2d 1132, 1136 (Pa. Super. 2003) ("Issues not raised to the trial court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). In order to preserve an issue for review, a party must make a timely and specific objection.").

654 A.2d 555, 557 (Pa. Super. 1994) (the weight to the testimony of an expert is for the jury to determine).

In his second issue, Appellant argues that the Commonwealth failed to establish that a firearm was used to threaten bodily injury, or that the victim was placed in fear of bodily injury. Appellant's Brief at 13-16. Appellant asserts that the projectile retrieved from the crime scene was never examined or forensically tested to conclusively determine it to be a bullet fragment, and argues that the evidence was insufficient to establish that he utilized a deadly weapon or one capable of causing injury. *Id*. For the foregoing reasons, Appellant claims that the evidence was insufficient to support his convictions for robbery or aggravated assault. We disagree.

To sustain Appellant's conviction for aggravated assault (serious bodily injury), the Commonwealth was required to demonstrate that Appellant "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1).

Appellant's conviction for aggravated assault (bodily injury), required the Commonwealth to demonstrate that he "attempt[ed] to cause or intentionally or knowingly caus[ed] bodily injury to another with a deadly weapon". 18 Pa.C.S.A. § 2702(a)(4).

We have explained that "[a]ggravated assault can be demonstrated with proof of such intent regardless of whether it was impossible to actually

cause serious bodily injury. Likewise, aggravated assault can be found with proof of such intent regardless of whether any serious bodily injury resulted. Finally, aggravated assault can be found with proof of such intent even if no actual injury resulted." ***Commonwealth v. Gruff***, 822 A.2d 773, 777 (Pa. Super. 2003) (citations omitted).

To sustain Appellant's conviction for robbery (serious bodily injury) the Commonwealth was required to prove that in the course of committing a theft, Appellant "threaten[ed] another with or intentionally put ... him in fear of immediate serious bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(ii).

To sustain the conviction for robbery (bodily injury) the Commonwealth was required to demonstrate that in the course of committing a theft, Appellant "inflict[ed] bodily injury upon another or threaten[ed] another with or intentionally put[] him in fear of immediate bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(iv).

"Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***Id***. A deadly weapon is defined as "[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or

intended to be used, is calculated or likely to produce death or serious bodily injury." *Id*.

Again, Ms. Hatfield testified that during the robbery, the man wearing the yellow baseball cap brandished a gun and demanded money. N.T., 1/7/13, 21-22. When Ms. Hatfield informed him she did not have any money, the man pointed the gun and fired. *Id*. at 24-25. Ms. Hatfield heard a loud "popping" or "exploding" sound but was not struck, and she threw a can of mace at her assailants. *Id*. The two men then left the store, and when Ms. Hatfield followed them, the man carrying the gun fired two more times, with the projectiles from the gun shattering the storefront's glass door. *Id*. at 25-26.

Thelma Crow, who was also in the Citgo at the time of the robbery, testified that she was in the back of the store when she heard Ms. Hatfield say "get away from me." N.T., 1/7/13, at 32-35. Ms. Crow then saw Ms. Hatfield speaking to two men, one of whom was trying to get behind the counter. *Id*. Ms. Crow took cover, and a few moments later, when she heard the two men running away, she emerged to see the glass door broken, and she noticed an object on the ground that "looked like a bullet." *Id*.

We agree with the trial court that the foregoing evidence was sufficient for the jury to conclude that Appellant pointed the gun toward Ms. Hatfield and repeatedly fired it at her or in her direction. Although the projectile

from the gun did not strike Ms. Hatfield, it was discharged with enough force to shatter a glass door, from which the jury could have reasonably inferred that it was capable of causing injury.

Viewed in the light most favorable to the Commonwealth, this evidence, together with all reasonable inferences, was sufficient for the jury to find that Appellant attempted to cause serious bodily injury to Ms. Hatfield under circumstances manifesting extreme indifference to the value of her life, to sustain Appellant's conviction for aggravated assault under 18 Pa.C.S.A. § 2702(a)(1), and that he attempted to cause Ms. Hatfield bodily injury with a deadly weapon, to sustain his conviction for aggravated assault under 18 Pa.C.S.A. § 2702(a)(4). Additionally, this evidence was sufficient to demonstrate that Appellant, in the course of committing a theft, threatened or intentionally put Ms. Hatfield in fear of bodily injury and serious bodily injury to sustain his robbery convictions under 18 Pa.C.S.A. § 3701(a)(1)(ii) and (iv).

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/11/2014