J-S01003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SANDRA L. HOHENWARTER, | : | |
| | : | |
| Appellant | : | No. 1111 MDA 2017 |

Appeal from the Judgment of Sentence June 16, 2017
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s): CP-36-CR-0005208-2016

BEFORE: GANTMAN, P.J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED MARCH 15, 2018**

Sandra L. Hohenwarter ("Hohenwarter") appeals from the judgment of sentence imposed following her convictions of driving under the influence of a controlled substance ("DUI"), operating a vehicle without a valid inspection sticker, and operating a vehicle without evidence of emission inspection.[1] We affirm.

On June 28, 2016, Pennsylvania State Trooper Adam Shutter ("Trooper Shutter") was on traffic enforcement duty, in a marked patrol car, on Route 462 in East Lampeter Township. At approximately 1:09 p.m., Trooper Shutter observed a red Chevrolet Camaro, traveling eastbound, with expired inspection stickers. When the Camaro had passed his location, Trooper Shutter made a U-turn to pursue the vehicle.

_____

[1] 75 Pa.C.S.A. §§ 3802(d)(2), 4703(a), 4706(c)(5).

Trooper Shutter caught up with the vehicle in the area of Greenfield Road and Route 340 and initiated a traffic stop. Trooper Shutter informed the driver, Hohenwarter, that he had pulled her over for an inspection violation, and requested her license, registration and proof of insurance. According to Trooper Shutter, it took Hohenwarter more time to gather her information than it would for an average person during a non-DUI vehicle stop, and Hohenwarter had difficulty locating her license, even though it was visible in her wallet. Trooper Shutter also noticed that Hohenwarter's pupils were "extremely constricted," her speech was slurred, and she exhibited delayed reactions. Trooper Shutter asked Hohenwarter whether she had taken any kind of medication, and she replied that she was on Adderall and Metformin. Trooper Shutter then asked Hohenwarter whether she had taken any narcotics, and she replied that she has a prescription for oxycodone to manage pain, and that she had taken some the previous evening.

Based on his observations, Trooper Shutter asked Hohenwarter to exit the vehicle and submit to field sobriety tests. Hohenwarter indicated that she had a back or leg issue, but she agreed to perform the tests. According to Trooper Shutter, Hohenwarter's performance on each of the tests showed signs of impairment. Trooper Shutter placed Hohenwarter under arrest for suspicion of DUI, and transported Hohenwarter to the police station for an evaluation by Trooper Stephanie Schiavoni ("Trooper Schiavoni"), a drug recognition expert ("DRE").

Trooper Schiavoni evaluated Hohenwarter using the DRE program's 12-step standardized process. Based on her observations, Trooper Schiavoni concluded that Hohenwarter was likely under the influence of a central nervous system depressant and a narcotic analgesic. Additionally, Trooper Schiavoni informed Trooper Shutter that, in her opinion, Hohenwarter was "incapable of safe driving due to those two drug categories." Trooper Shiavoni recommended that Hohenwarter be taken to the hospital for chemical testing.

Trooper Shutter transported Hohenwarter to Lancaster General Hospital for a blood test. Trooper Shutter read Hohenwarter the implied consent warnings, as contained in the revised Pennsylvania State Police DL-

26 form.[2] Hohenwarter signed the DL-26 form to indicate that she had been advised of the implied consent warnings, and consented to chemical testing.

Hohenwarter's blood was drawn at the hospital and submitted to NMS Labs for testing. The toxicology report indicated the presence of amphetamine, oxycodone, and citalopram. The concentration of each substance was within the therapeutic range.

Following a bench trial, Hohenwarter was convicted of the above-mentioned offenses. The trial court deferred sentencing, pending a drug and alcohol evaluation and a Court Reporting Network evaluation. The trial court sentenced Hohenwarter to 6 months of intermediate punishment, with the first two weeks to be spent on house arrest; ordered her to pay the

---

[2] Notably to the instant appeal, the DL-26 form that Trooper Shutter read to Hohenwarter was the new version, which had been revised in response to the decision of the United States Supreme Court in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). In *Birchfield*, the Supreme Court concluded that "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." *Id.* at 2185. Additionally, the Supreme Court held that blood tests taken pursuant to implied consent laws are an unconstitutional invasion of privacy. *Id.* at 2186. The Supreme Court stated that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* Here, the parties agreed during the bench trial that the instant case does not present a *Birchfield* issue, as Trooper Shutter read Hohenwarter the implied consent warnings contained in the revised, post-*Birchfield* DL-26 form. *See* N.T., 5/10/17, at 4 (wherein Hohenwarter's defense attorney agreed that *Birchfield* is not applicable to the instant case, and acknowledged that Trooper Shutter used the updated DL-26 form); *see also id.* at 36 (wherein Trooper Shutter testified that he read Hohenwarter the implied consent warnings contained in "the DL-26 form, which was amended").

mandatory fine of $1,000, plus costs; and suspended her driving privileges for 12 months.

Hohenwarter filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Hohenwarter raises the following issue for our review:

> Did the [] trial court err as a matter of law in finding there was sufficient evidence to convict [Hohenwarter] of [DUI,] when the Commonwealth failed to produce sufficient evidence as to each material element of the offense charged and the commission thereof by [Hohenwarter] beyond a reasonable doubt?

Brief for Appellant at 5 (some capitalization omitted).[3]

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our prior judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence.

---

[3] The Commonwealth did not file a brief.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted).

Hohenwarter claims that there was insufficient evidence to support her conviction of DUI under 75 Pa.C.S.A. § 3802(d)(2). Brief for Appellant at 10. Specifically, Hohenwarter argues that the Commonwealth failed to produce sufficient evidence that her ability to drive safely was impaired. *Id.* at 11, 12-13. Hohenwarter points out that all of the drugs in her system on the day of her arrest were prescription medications. *Id.* at 13. Additionally, Hohenwarter asserts that Trooper Shutter did not observe her driving erratically. *Id.* at 13, 16-17. Hohenwarter attributes the indicia of intoxication (*i.e.*, slurred speech, delay in producing documentation, and her performance on field sobriety tests) to "innocuous factors," such as her missing partial denture, the presence of her dog in her vehicle, and pain from her underlying medical conditions. *Id.* at 13-16, 17.

Section 3802 of the Vehicle Code provides, in relevant part, as follows:

> **(d) Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> * * *
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2). Further, "[t]his section does not require proof of a specific amount of a drug in the driver's system. It requires only proof

that the driver was under the influence of a drug or combination of drugs to a degree that the ability to drive is impaired." ***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa. Super. 2012).

During the bench trial, Trooper Shutter testified that on June 28, 2016, he was on traffic enforcement duty in East Lampeter Township. ***See*** N.T., 5/10/17, 11-12. Trooper Shutter's marked patrol vehicle was located in the center turn lane of Route 462, facing westbound. ***See id.*** at 12. Trooper Shutter testified that at approximately 1:09 p.m., he observed a red Chevrolet Camaro with an expired inspection sticker traveling eastbound on Route 462. ***See id.*** at 12-13. After the vehicle had passed him, Trooper Shutter made a U-turn and pursued the Camaro. ***See id.*** at 13.

Trooper Shutter testified that he caught up to the Camaro in the area of Greenfield Road and Route 340 and initiated a traffic stop. ***See id.*** at 13-14. Trooper Shutter stated that he approached the driver of the Camaro, Hohenwarter; explained that he had pulled her over for an inspection violation; and requested her license, registration and proof of insurance. ***See id.*** at 14. According to Trooper Shutter, "compared to … [] his normal traffic stop for a person that is not under the influence, it took [Hohenwarter] more time to gather the information, which was readily visible from where [he] was standing[.]" ***Id.*** at 16; ***see also id.*** (wherein Trooper Shutter explained that he was able to read the address on Hohenwarter's driver's license while it was in her wallet, but that Hohenwarter "just kind of missed it," and had to look through her wallet a

few times before retrieving her license). Trooper Shutter, who has received training and certification in Advanced Roadside Impaired Drug Enforcement ("ARIDE"), noted that Hohenwarter's eyes were "extremely constricted," her speech was slurred, and she exhibited delayed reactions. *See id.* at 7, 17-18. Additionally, Trooper Shutter stated that he did not smell alcohol. *See id.* at 18. Trooper Shutter asked Hohenwarter if she was on any medications, and Hohenwarter replied that she was on Adderall and Metformin. *See id.* Trooper Shutter then asked Hohenwarter whether she was on any kind of narcotic. *See id.* at 19. Hohenwarter stated that she has a prescription for oxycodone, and that she had taken some the previous evening. *See id.*

Based on his observations, Trooper Shutter asked Hohenwarter to exit her vehicle in order to perform field sobriety tests. *See id.* at 20. Hohenwarter agreed to perform the tests, and indicated that she had pain from a sciatic nerve. *See id.* at 22, 46; *see also id.* at 22 (wherein Trooper Shutter testified that he had taken her medical issues into consideration with respect to Hohenwarter's performance). Trooper Shutter testified that when Hohenwarter performed the walk-and-turn test, she exhibited four out of the eight clues that indicate impairment, *i.e.*, taking too many steps, turning in the wrong direction or in the wrong manner, placing her feet side by side rather than heel to toe, and raising her arms. *See id.* at 24; *see also id.* (wherein Trooper Shutter stated that an individual must typically display two of the clues in order to indicate impairment). Trooper Shutter also testified

that Hohenwarter exhibited three out of the four clues that indicate impairment when she performed the one-leg-stand test, *i.e.*, dropping her raised foot, swaying, and raising her arms. ***See id.*** at 27-28; ***see also id.*** at 27 (wherein Trooper Shutter specified that an individual must display two of the clues in order to indicate impairment); ***id.*** at 28 (wherein Trooper Shutter testified that when Hohenwarter indicated that she was in pain when she attempted the test, he allowed her to restart the test using her opposite leg). Based on his ARIDE training, Trooper Shutter also administered the Romberg balance test, which may be used to indicate impairment from drug use. ***See id.*** at 28-29. Trooper Shutter observed eyelid and leg tremors when Hohenwarter performed the Romberg balance test, which can indicate the use of a stimulant or depressant. ***See id.*** at 29-30. The field sobriety tests were recorded with the in-car camera, and the video was admitted into evidence at trial. ***See id.*** at 31 (wherein the trial court admitted into evidence the recording of Hohenwarter's field sobriety tests). Based on Hohenwarter's performance on the field sobriety tests, Trooper Shutter placed Hohenwarter under arrest for suspicion of DUI, and requested that a DRE respond to the police station to conduct additional testing. ***See id.*** at 35.

Trooper Schiavoni, the DRE who conducted Hohenwarter's drug evaluation, testified that the DRE program uses a 12-step standardized process to determine whether an individual is impaired, whether the impairment is related to a drug, and which of seven drug categories caused

the impairment.  **See id.** at 58-59.  Trooper Schiavoni testified that before starting her preliminary examination, she informed Hohenwarter of her **Miranda**[4] rights and reviewed the waiver of rights form with Hohenwarter.  **See id.** at 76-77.  Hohenwarter signed the waiver of rights form and agreed to proceed with the evaluation.  **See id.** at 78.  During the preliminary examination, Hohenwarter told Trooper Schiavoni that she takes Metformin, Adderall, Xanax and Celexa (citalopram) daily.  **See id.** at 83.  Hohenwarter also admitted that she had taken oxycodone at approximately 11:00 a.m. **See id.**

Trooper Schiavoni testified that Hohenwarter's eye evaluation showed a lack of convergence when trying to follow a moving object.  **See id.** at 90. Trooper Schiavoni testified that, during the modified Romberg balance test, Hohenwarter "estimated 20 seconds as 30 seconds," and "[s]he had a two-inch circle or sway."  **Id.** at 93.  Trooper Schiavoni stated that during the walk-and-turn test, Hohenwarter demonstrated three out of the eight clues used to indicate impairment, i.e., stepping out of position, raising her arms for balance, and turning in the wrong direction.  **See id.** at 95-96. Additionally, Trooper Schiavoni observed leg and body tremors during the test.  **See id.** 95-96, 97.  Hohenwarter did not complete the one-leg stand test because she had complained of pain.  **See id.** at 98.  Trooper Schiavoni

---

[4] **Miranda v. Arizona**, 384 U.S. 435 (1966).

testified that she allowed Hohenwarter to complete the finger-to-nose test in a seated position. *See id.* at 99. Additionally, Trooper Schiavoni testified that Hohenwarter touched below the tip of her nose on several attempts, failed to follow instructions, and moved her arms slowly. *See id.* at 101-02.

Further, Trooper Schiavoni observed that Hohenwarter's speech sounded "thick and slurred" during the examination. *See id.* at 87, 111. Trooper Schiavoni testified that the size of Hohenwarter's pupils did not change significantly when checked under three different light settings. *See id.* at 106. Trooper Schiavoni also stated that Hohenwarter's muscle tone "felt a little on the flaccid side" during the examination. *Id.* at 108; *see also id.* (wherein Trooper Schiavoni explained that individuals impaired by central nervous system depressants and narcotics tend to have flaccid muscle tone). Trooper Schiavoni noted that Hohenwarter seemed drowsy, slow and sluggish during the evaluation. *See id.* at 111. Additionally, Trooper Schiavoni testified that Hohenwarter's speech and movements were different at the time of trial than they were at the time of the evaluation. *See id.* at 111-14. Based on her evaluation, Trooper Schiavoni concluded that Hohenwarter was likely under the influence of a central nervous system depressant and a narcotic analgesic. *See id.* at 110, 111-12. Trooper Schiavoni testified that, in her opinion, Hohenwarter "was incapable of safe driving due to those two drug categories." *Id.* at 116. Trooper Schiavoni shared her conclusions with Trooper Shutter, and recommended that Hohenwarter be taken to the hospital for a blood test. *See id.*

- 11 -

Trooper Shutter transported Hohenwarter to Lancaster General Hospital, and read her the implied consent warning contained in the revised DL-26 form. *See id.* at 36-37. Hohenwarter signed the DL-26 form and agreed to submit to chemical testing. *See id.* at 37. Donna Papsun ("Papsun"), the board-certified forensic toxicologist at NMS Labs who reviewed the data obtained from Hohenwarter's blood sample and completed the report, testified that the test resulted in positive findings for "amphetamine at 230 nanograms per millimeter, oxycodone at 26 nanograms per milliliter, and citalopram at 100 nanograms per milliliter." *Id.* at 152. According to Papsun, the concentration of each drug was within the therapeutic range, "depending on whether or not someone has a prescription and what that prescription would be for." *Id.* Papsun testified that the presence of a drug within the therapeutic range does not necessarily mean that the individual could not be impaired by that substance. *Id.* at 153; *see also id.* at 162 (wherein Papsun testified that "[j]ust because someone is prescribed a drug doesn't necessarily mean they're not subject to the adverse effects of the drug," and explaining that the physical manifestations of the drug must be considered). Papsun stated that she was most concerned with the presence of oxycodone, and a concentration of oxycodone at 26 nanograms per milliliter could be sufficient to cause impairment. *Id.* at 152, 153-54, 155. Papsun testified that, in her opinion, after hearing the testimony of Troopers Shutter and Schiavoni and watching the recording of the field sobriety tests, the symptoms exhibited by

- 12 -

Hohenwarter were consistent with being under the influence of oxycodone. *See id.* at 155-157; *see also id.* at 156 (wherein Papsun explained that the effects of oxycodone include "constricted pupils, slurred speech, on-the-nod behavior, [and] slow, sluggish reactions"). Additionally, Papsun testified that pain could account for some of Hohenwarter's incoordination, but would not explain her slurred speech, delayed reaction, fumbling, slow responses, or spatial understanding. *See id.* at 158.

Upon review, we conclude that the evidence presented at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to establish that Hohenwarter "was under the influence of a drug or combination of drugs to a degree that [her] ability to drive [was] impaired." *Tarrach*, 42 A.3d at 345. Accordingly, we affirm Hohenwarter's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2018