J-A12001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD CHARLES BACHNER | : | |
| | : | |
| Appellant | : | No. 414 WDA 2018 |

Appeal from the Judgment of Sentence October 19, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002239-2017

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED SEPTEMBER 14, 2020**

Appellant, Ronald Charles Bachner, *pro se*, appeals from the judgment

of sentence of six months of probation, which was imposed after his conviction

at a bench trial for unsworn falsification to authorities – statements "under

penalty."[1]  Appellant claims, *inter alia*, that the evidence was insufficient to

sustain his conviction.  After careful review, we agree with Appellant, and we

reverse his conviction and vacate his judgment of sentence.

The facts underlying this appeal are as follows:

On August 19, 2016, Appellant traveled to Island Firearms in
Neville Township[, Allegheny County,] attempting to complete an
online purchase of a Phoenix Arms semiautomatic pistol.  Prior to
completing the firearm purchase, Appellant was provided with two
packets of forms, one being the ATF 4473 [("ATF Form")] and the
other the Pennsylvania State Police [Form] SP 4-113 [("PSP

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 4904(b).

Form")], both required by state law to be completed prior to purchasing a firearm. Both forms place the buyer on notice that they must answer the questions truthfully . . . When completing the forms, Appellant . . . answered in the negative when asked about whether he had prior convictions for a crime punishable by imprisonment for a term exceeding one year, even if a shorter sentence was served. The clerk processed the forms and Appellant was denied by PICS (Pennsylvania Instant Check System), to which he filed an appeal . . . The appeal was ultimately denied.

Officer D. Ryan Ging, of the Ohio Township Police Department, was assigned with the investigation of the matter and learned that Appellant was convicted in March 2013 for bribery (F2)[, 18 Pa.C.S. § 4701(a)(1),] and official oppression (M2), [*id.* § 5301(1),] thereby disqualifying him from possessing and/or transferring a firearm.[2]

Trial Court Opinion, dated December 6, 2019, at 6-7.

On December 1, 2016, Officer Ging filed a criminal complaint against Appellant, charging him with unsworn falsification to authorities, as well as knowingly and intentionally making materially false written statement, including a statement on any form promulgated by Federal or State agencies, in connection with the purchase, delivery or transfer of a firearm.[3] The criminal complaint alleged that Appellant had falsely answered Question 11.c. on the ATF Form and Questions 31 and 32 on the PSP Form.

ATF Form 11.c. asked: "Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including

_____

[2] **Commonwealth v. Bachner**, 153 A.3d 1110 (Pa. Super. 2016) (unpublished memorandum).

[3] 18 Pa.C.S. § 6111(g)(4)(ii).

- 2 -

probation? *(See Instructions for Question 11.c.)*" Appellant checked the box marked "No" but also wrote a question mark and his initials next to the question.

PSP Form Question 31 asked: "HAVE YOU EVER BEEN CONVICTED OF A CRIME ENUMERATED IN SECTION 6105(B), OR DO ANY OF THE CONDITIONS UNDER 6105(C) APPLY TO YOU? (READ INFORMATION ON BACK PRIOR TO ANSWERING.)" Appellant checked the box for "NO."

PSP Form Question 32 asked:

ARE YOU NOW CHARGED WITH, OR HAVE YOU EVER BEEN CONVICTED OF A CRIME PUNISHABLE BY IMPRISONMENT FOR A TERM EXCEEDING ONE YEAR? THIS IS THE MAXIMUM SENTENCE THAT YOU "COULD HAVE RECEIVED," NOT THE ACTUAL SENTENCE YOU DID RECEIVE. (THIS DOES NOT INCLUDE FEDERAL OR STATE OFFENSES PERTAINING TO ANTITRUST, UNFAIR TRADE PRACTICES, RESTRAINTS OF TRADE, OR REGULATION OF BUSINESS; OR STATE OFFENSES CLASSIFIED AS MISDEMEANORS AND PUNISHABLE BY A TERM OF IMPRISONMENT NOT TO EXCEED TWO YEARS.) (READ INFORMATION ON BACK PRIOR TO ANSWERING.)

Appellant again checked the box for "NO."

At Appellant's bench trial on October 10, 2017, Appellant was represented by counsel, and the Commonwealth presented its case entirely by stipulations. The parties stipulated to Appellant's 2013 conviction for felony bribery. N.T. at 5. The Commonwealth also submitted Officer Ging's affidavit of probable cause as Commonwealth's Exhibit 1 and the ATF Form and the PSP Form combined as Commonwealth's Exhibit 2, all on stipulation. ***Id.***

Appellant was the sole witness at trial, and he testified that he was aware that he had been convicted of "some crimes" in 2013 and served three years of probation. *Id.* at 7-8. He was asked about his understanding of "what [he] could do and couldn't do once [he] completed the probation and paid the court costs and fines[,]" and he answered, "Well, I figured I was a normal citizen again." *Id.* at 9. He was then specifically asked about the impact of his 2013 convictions on his firearms license:

Q. With respect to – let's go back to 2013. As of 2013, did you have a license to carry a firearm?

A. Yes.

Q. Subsequent to your conviction, did the sheriff's department ever notify you that they were revoking that license to carry that firearm?

A. No.

*Id.* Appellant added that he had asked the attorney who was handling his appeal from the 2013 matter how those convictions would "affect[ his] gun rights[,]" but his counsel did not know. *Id.* at 11. He was then shown the ATF Form and asked:

Q. All right. Can you explain to the [c]ourt on that form, Question No. 11-C, do you see it?

A. Yes.

Q. It asks you, "Have you ever been convicted in any court of a felony or any other crime for which the Judge could have imprisoned you for more than one year even if you received a shorter sentence, including probation (see instructions for Question 11-C)." Do you see that?

A. Yes.

Q.     What did you put down?

A.     Well, I answered no, but I also -- I also put a question mark there with my initial because I wasn't sure of the proper answer to that question, based on my understanding at that time of events in my life. . . .

Q.     And how did you understand that?

A.     Well, I thought I had my rights to vote restored after I did my probation.  I didn't see -- having known that, knowing that I had a permit from Allegheny County to carry a gun, I thought that was the appropriate answer . . .

[Q.]   What is your understanding of what happens if you just answer yes even if confused?

A.     I answered the questions to the best of my ability.  I'm assuming that, you know, the decision whether or not I get a firearm is in somebody else's hands.

*Id.* at 13-14.  Appellant was then shown the PSP Form and asked:

Q.     All right.  That form asks, "Have you ever been convicted of a crime enumerated in Section 6105(b) or do any of the conditions under 6105(c) apply to you?  Read information on back prior to answering."  When you filled in "no" for that, did you read the instructions on the back prior to answering?

A.     Which question are you referring to?

Q.     That would be Question No. 31.

A.     Question 31, you know, you look at the back, and you go through the information on the back of the types of convictions that they determine -- my copy is not readable, but they determine what individuals and what convictions cannot receive a gun.

Q.     When you read Question No. 31, which directs you to read the information on the back prior to answering, did you read the information on the back prior to answering?

A.     Yes.

Q.     All right.  The same with Question No. 32, which asks, "Are you charged with or have you ever been convicted of a crime punishable by imprisonment for a term exceeding one year?  This

is the maximum sentence you could have received," et cetera, et cetera. And then it goes on to talk about restraint in trade, regulation of business or state offenses being excludable, and that also tells you to read the information on the back prior to answering. Did you read the information on the back prior to answering those questions?

A. I believe so. Again, this form reminded me of the application for a firearm. I did read that. I never knew what I could be convicted for or what the penalty could have been for bribery and official oppression. No one ever told me that, and I couldn't find it anywhere.

*Id.* at 17-18. Appellant further explained: "After my conviction in 2013, okay, in 2014 the sheriff's office sent me a renewal. I filled out the renewal for that permit, sent it in, and the sheriff's office reissued the firearms license. They reissued me another one." *Id.* at 22.

On cross-examination, the Commonwealth again asked Appellant about his understanding of Question 11.c. from the ATF Form:

Q. And we can agree that the Question 11-C that you filled out on that form says that regardless of punishment, even including a period of probation, that you would have to check no -- or you would have to check yes to that form, correct?

A. I don't understand. . . .

Q. At the end of that question it says "including a period of probation," does it not?

A. That's in the question?

THE COURT: It's not a discussion. If you don't understand the question --

A. I don't understand. I'm not following –

*Id.* at 23-24.

After counsel's arguments, the trial court took the matter under advisement. *Id.* at 36.

On October 19, 2017, the trial reconvened. The trial court found Appellant guilty of unsworn falsification to authorities and not guilty of knowingly and intentionally making materially false written statement.[4] The court immediately sentenced Appellant to six months of probation.

> On October 27, 2017, Appellant filed *pro se* post-sentence motions. Th[e trial c]ourt did not rule on the motions, nor did the Department of Court Records issue an Order denying the post-sentence motions by operation of law. On March 21, 2018, Appellant filed a *pro se* Notice of Appeal.
>
> On October 23, 2018, the [t]rial [c]ourt sent a letter to the Pennsylvania Superior Court Prothonotary indicating that it did not act on the Appellant's *pro se* Notice of Appeal as a result of there being no final order, which was required to properly perfect an appeal. On December 19, 2018, the Superior Court remanded jurisdiction to the [t]rial [c]ourt for the entry of an order denying Appellant's post-sentence motions by operation of law and to determine the status of Appellant's counsel, including whether counsel abandoned Appellant and whether Appellant retained counsel or intended to proceed *pro se* pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).
>
> The Department of Court Records issued an Order denying the post-sentence motions by operation of law on January 2, 2019. Appellant did not file a timely Notice of Appeal within thirty days

---

[4] There is no explanation in the certified record as to why the trial court found Appellant guilty of unsworn falsification to authorities but not guilty of making materially false written statement. Pursuant to our research, we found no cases where a defendant was charged with both crimes but only convicted of one.

Additionally, nowhere in the trial court opinion nor elsewhere in the record does the court state what question or questions on which of the two forms it found that Appellant answered falsely. **See generally** Trial Court Opinion, dated December 6, 2019. Additionally, in its brief to this Court, the Commonwealth only references Question 11.c. from the ATF Form and makes no mention of any questions from the PSP Form. Commonwealth's Brief at 18. This lack of precision by both the trial court and the Commonwealth has encumbered our consideration of this appeal.

of the date of that denial order. On May 20, 2019, the [t]rial [c]ourt sent another letter to the Superior Court Prothonotary indicating that chambers had been notified by Appellant in writing that he intended to proceed *pro se* and that prior counsel had been terminated. Additionally, the [t]rial [c]ourt indicated that the Department of Court Records had issued an Order denying the post-sentence motions by operation of law, Appellant failed to properly perfect an appeal from that denial order, and as such, the [t]rial [c]ourt considered the March 21, 2018 *pro se* appeal terminated.

On June 18, 2019, the Superior Court issued a Rule to Show Cause indicating that because Appellant had filed an appeal in excess of the thirty-day time period, that Appellant was to file a letter with the Superior Court Prothonotary showing cause why the appeal should not be quashed. On June 28, 2019, Appellant filed his response. On July 12, 2019, the Superior Court issued an Order directing the [t]rial [c]ourt to determine if prior counsel had properly withdrawn as counsel of record and to schedule a hearing to determine whether counsel had abandoned Appellant and whether Appellant intended to proceed *pro se* pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

On August 22, 2019, the [t]rial [c]ourt held a hearing on the matter and issued an Order on August 23, 2019, holding that: (1) prior counsel had not properly withdrawn his representation; (2) Appellant had initiated *pro se* post-sentence proceedings without informing his counsel; (3) Appellant intended to proceed *pro se*, and, (4) that the [t]rial [c]ourt had conducted a colloquy with Appellant regarding his decision to represent himself and determined that his waiver of counsel was knowing, intelligent, and voluntary pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

On October 1, 2019, the [t]rial [c]ourt issued an Order directing Appellant to file his Concise Statement of Errors Complained of on Appeal pursuant to [Pa.]R.A.P. 1925(b) within twenty-one days of receipt of the Order.

On October 21, 2019, Appellant filed his 1925(b) Statement.

*Id.* at 2-5.[5]

_____

[5] The trial court entered its opinion on December 6, 2019.

Appellant presents the following issues for our review:

[1.] Did Appellant make any knowingly false statements in violation of 18 Pa. C. S. § 4904(b)?

[2.] Is [PSP Form] unconstitutional and/or flawed as the form did not inform [Appellant] of his Fifth Amendment constitutional right not to provide evidence or statements that could be used against [Appellant] in any prosecution?

[3.] Is [PSP Form] unconstitutional and/or flawed as the form did not inform [Appellant] he did not have to provide any information other than identifying information in accordance with 18 Pa. C.S. § 6111(b) thus exposing [Appellant] to prosecution without notice?

[4.] Is [PSP Form] unconstitutional and/or flawed as the form did not inform [Appellant] that his 2013 conviction for bribery (18 Pa.C.S. §4701(a)(1)) is "disabling" under State and Federal law, as the Commonwealth claims, and is not listed under 18 Pa.C.S. § 6105(b) or 6105(c) which identifies prohibiting offenses thus denying [Appellant] constitutional protections and due process?

[5.] Is [Appellant] within Question 32 of [PSP Form] as the question applies to those who are identified within 18 Pa.C.S. § 6105(b) and or 6105(c), which Officer Ryan Ging describes as deceptive?

[6.] That all felonies are not disabling but character based as per the ***Commonwealth v. Baxter*** (decided August 28, 2008) case used to prosecute [Appellant]. If [Appellant]'s bribery conviction is disabling then [Appellant] was not put on notice of [Appellant]'s disabling of his Second Amendment constitutional right and Pennsylvania rights under Pennsylvania Constitution Article 1, Section 21, to purchase a handgun for protection or when it (the disabling) would and or could be restored.

Appellant's Brief at 5-7 (issues re-ordered to facilitate disposition) (suggested answers omitted).

We first consider Appellant's claim that the evidence was insufficient to sustain his conviction. Appellant's Brief at 49. Appellant asserts that he

answered the questions and signed the forms at the end thereof (pursuant to Section 4904's unsworn falsification to authorities) to the best of his knowledge, providing answers that he believed to be true. *See id.* at 51. He adds: "The forms, either state or federal, cannot speak to Appellant[']s mindset and reasons for actions or reasons for placement of any answer. There was no oral testimony from the Police Officer or the Island Firearms clerk. There were no third party statements." *Id.* Accordingly, "Appellant asserts that [he] made no knowingly false statements[.]" *Id.*

> This Court's standard for reviewing sufficiency of the evidence claims is as follows:
>
>> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>>
>> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> *Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa.Super. 2012)).

- 10 -

*Commonwealth v. Izurieta*, 171 A.3d 803, 806 (Pa. Super. 2017) (internal brackets omitted).

The trial court convicted Appellant of violating Section 4904(b), which provides: "A person commits a misdemeanor of the third degree if he makes a written false statement which **he does not believe to be true**, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable." 18 Pa.C.S. § 4904(b) (emphasis added).

Preliminarily, we note that Appellant has not been convicted of any of the crimes enumerated in 18 Pa.C.S. § 6105(b) nor does he qualify for any of the categories listed under 18 Pa.C.S. § 6105(c). Therefore, he answered PSP Form Question 31 correctly.

As for ATF Form Question 11.c. and PSP Form Question 32, it is undisputed that Appellant had been convicted of felony bribery and thus should have answered "Yes" to these two questions. The only issue for our review therefore is whether the evidence was sufficient to establish that Appellant did "not believe" his answers "to be true" when he answered "No" to both questions. 18 Pa.C.S. § 4904(b).

In *Commonwealth v. Kennedy*, 789 A.2d 731, 732 (Pa. Super. 2001), the appellant analogously was convicted of unsworn falsification to authorities and contended that the evidence was insufficient to sustain his conviction; this Court agreed and reversed his conviction. In *Kennedy*, *id.*, the appellant had completed an Application for a Pennsylvania License to Carry Firearms, which,

- 11 -

like the forms at issue in the current action, required various questions to be answered "Yes" or "No." The appellant answered "No" to a question asking if he had ever been convicted of an offense under The Controlled Substance, Drug, Device, and Cosmetic Act. *Id.* at 733. Following a PICS check, a Cumberland County deputy sheriff discovered that the appellant had been convicted of possessing a small amount of marijuana and drug paraphernalia. *Id.* at 734. The appellant argued that he had answered the questions to the best of his knowledge and that he had made a "mistake" when interpreting the question about his prior drug conviction due to his "confusion" over when to reference the back of the application in answering the questions. *Id.* Furthermore, this Court observed:

> [I]t is uncontroverted that the only evidence reflective of the state of mind of the accused was generated by Appellant, who stated unequivocally his actions were the product of confusion and not a knowing intent to falsify information. Thus, evidence of Appellant (in answering [the question about prior drug convictions]) "mak[ing a] written false statement ... not believ[ing it] to be true" is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Id.* Accordingly, this Court held that the fact-finder "ignored the unrefuted account that Appellant's act of filling out [the form] was the product of a mistake and not the knowing and intentional act of one seeking to deceive." *Id.*

Appellant in the current appeal likewise had completed a form related to firearms that required various questions to be answered "Yes" or "No." *Compare Kennedy*, 789 A.2d at 732, *with* Trial Court Opinion, dated

- 12 -

December 6, 2019, at 6. Appellant was similarly convicted of unsworn falsification to authorities based on answering "No" to questions about his prior convictions. *Compare Kennedy*, 789 A.2d at 733, *with* Trial Court Opinion, dated December 6, 2019, at 7. His negative answers were proven to be false following a PICS check. *Compare Kennedy*, 789 A.2d at 734, *with* Trial Court Opinion, dated December 6, 2019, at 7. Appellant comparably testified that he had answered the questions to the best of his knowledge and that any mistake was due to his confusion as to what the questions were asking. *Compare Kennedy*, 789 A.2d at 734, *with* N.T. at 13, 15. In addition to Appellant's trial testimony about his confusion, he also contemporaneously wrote a question mark on the ATF Form next to Question 11.c. while completing the form in the firearms store, further demonstrating his confusion. N.T. at 13. Additionally, when the Commonwealth cross-examined Appellant about his comprehension of certain language in Question 11.c., he repeatedly replied, "I don't understand[,]" further supporting his assertion that he was confused about the question. *Id.* at 24.

Furthermore, as with the appellant in *Kennedy*, 789 A.2d at 734, Appellant was the sole witness, meaning that it was also "uncontroverted" in the current case "that the only evidence of the state of mind of the accused was generated by Appellant, who stated unequivocally his actions were the product of confusion and not a knowing intent to falsify information." The Commonwealth presented no direct evidence of Appellant's intent or belief in

answering the questions, whereas Appellant testified that he thought that his answers were "appropriate[.]" N.T. at 14.

Moreover, Appellant had several reasons for answering "No" to ATF Form Question 11.c. and PSP Form Question 32 in good faith. First, his firearms license had been renewed subsequent to his 2013 convictions; in fact, the sheriff's office had sent the renewal form to him. *Id.* at 9, 14, 22. Thus, he had no reason to believe that his 2013 convictions disqualified him from anything relating to firearms or that he would not have the same rights as a "normal citizen again." *Id.* at 9.

Second, Appellant testified that he "never knew . . . what the penalty could have been for bribery and official oppression[,]" that "[n]o one ever told him[,]" and that he "couldn't find it anywhere." *Id.* at 18. If he genuinely did not know that his convictions could have resulted in imprisonment for more than one year – and the Commonwealth presented no evidence challenging Appellant's assertion, then his answers to ATF Form Question 11.c. and PSP Form Question 32, while misguided, were not deceitful.[6]

Of course, the trial court was not required to believe Appellant's denials. *Izurieta*, 171 A.3d at 806 ("the fact-finder is free to believe all, part, or none of the evidence presented"). However, the trial court did not expressly

_____

[6] We further recognize that no one asked Appellant if he understood what a "felony" is, as the term is used in ATF Form Question 11.c., or if he comprehended that his bribery conviction qualified as a "felony." *See generally id.*

- 14 -

address Appellant's credibility. ***See generally*** Trial Court Opinion, dated December 6, 2019.

In conclusion, even viewing the evidence in a light most favorable to the Commonwealth as verdict winner, ***Izurieta***, 171 A.3d at 806, the evidence that Appellant "ma[d]e[] a written false statement which **he d[id] not believe to be true**" pursuant to 18 Pa.C.S. § 4904(b) was "weak and inconclusive[,]" and, ergo, "as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Kennedy***, 789 A.2d at 734; ***see also Izurieta***, 171 A.3d at 806 ("any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances"). Hence, as this Court did in ***Kennedy***, we are compelled to find that the trial court, as fact-finder, ignored the unrefuted account that Appellant's incorrect answers on the ATF Form and the PSP Form were "the product of a mistake and not the knowing and intentional act of one seeking to deceive." ***Id.*** Appellant may have been negligent in answering – or failing to research how best to answer – ATF Form Question 11.c. and PSP Form Question 32, but there is insufficient evidence to support a finding beyond a reasonable doubt that Appellant believed his written false statements to be untrue. ***See Izurieta***, 171 A.3d at 806 (only "[w]here there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt," can a "sufficiency of the evidence

claim . . . fail"). We are thereby constrained to reverse Appellant's conviction for violating 18 Pa.C.S. § 4904 and to vacate his judgment of sentence.[7]

Conviction for unsworn falsification to authorities reversed. Judgment of sentence vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/14/2020

---

[7] As we find the evidence to be insufficient to sustain Appellant's sole conviction, we need not reach his remaining appellate claims.